Thomas H. BOOKOUT, Appellant,

v.

Billy PUGH, Individually and d/b/a Billy Pugh Company and Billy Pugh Company, Inc., Appellees.

No. 879.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1974.

Jack E. A. White, North & White, Corpus Christi, for appellant.

Ernest F. Bogart, Jr., Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a breach of contract case. Thomas H. Bookout, hereinafter called plaintiff, sued Billy Pugh, individually and d/b/a Billy Pugh Company, and Billy Pugh Company, Inc., hereinafter called defendants, to recover money allegedly due him for breach of a written employment contract. Following a jury trial which commenced on October 23, 1973, a take nothing judgment was rendered for defendants on November 6, 1973. Plaintiff has appealed. We affirm.

Three separate questions are presented by the appeal. First, did the trial court err in overruling plaintiff's motion for judgment? Second, was it reversible error to submit Special Issue No. 5? Third, should the trial court have admitted evidence of defendants' acknowledgment that they were indebted to plaintiff in the sum of $5,000.00?

Plaintiff and the defendant Billy Pugh entered into a written agreement, dated May 29, 1967, whereby it was contemplated that a business organization would be formed for the purpose of developing and manufacturing air-sea rescue equipment. Defendant Pugh was to furnish the financing for the business, and was responsible for the design, development and manufac-

ture of the products. Plaintiff was to devote his full time to the business. In addition to provisions for reimbursement for expenses and compensation to plaintiff in a sum equal to 25% of the net profits from the business, the contract, in paragraph 6, further provided:

"6. It is understood and agreed that twenty-five percent (25%) of the net profits of the concern shall be reserved in a separate account (either actually or by bookkeeping entry as may be the most desirable practice) and be utilized solely for Research and Development, as that term is generally understood in industrial circles. Any surplus remaining in such Research and Development fund, that is, any amounts therein in excess of the actual requirements therefor, shall be deemed to belong equally to Pugh and Bookout and distributed to them equally as additional compensation for services rendered; with such distribution, if any, to be made at a time or times agreed upon by them."

The business, subsequent to the execution of the contract, was incorporated under the name of Billy Pugh Company, Inc. Plaintiff worked for the company until May 18, 1972, when he was fired.

Insofar as is pertinent to the judgment that was rendered and to this appeal, the jury found: 1) that as of May 18, 1972, there was not any surplus remaining unspent out of the sum which was to be allocated for research and development under the contract of May 29, 1967 (Special Issue No. 5); 2) the action by the defendant Pugh in firing plaintiff on May 18, 1972 was with good cause (Special Issue No. 7); and 3) that prior to May 18, 1972, plaintiff failed to devote his full time to the business (Special Issue No. 10).

The jury returned its verdict on October 29, 1973. Plaintiff filed a motion entitled "Motion for Judgment" on November 6, 1973. It was averred in Paragraph I thereof that it was undisputed that the defendants did not comply with the provisions of paragraph 6 of the contract, and that the failure to do so rendered defendants "liable to plaintiff" in the total sum of $12,357.22. In Paragraph II of the motion, it is alleged that it was undisputed that in the year 1971 the defendants charged the cost of a lathe ($5,722.00) as an expense which should have been capitalized, and that such action reduced the net profit for that year to plaintiff's damage (⅜ths of the cost of the lathe). Alternatively, it is averred that defendants are indebted to plaintiff in the sum of $3,500.00 for accrued wages", plus ¼th of the net profit for the year 1971, plus $1,732.00 "that should have been set aside in the research and development special account." The prayer was that "the Court enter judgment for plaintiff". The motion was expressly overruled on November 16, 1973.

■ Plaintiff's first point of error complains that "the trial court erred in overruling plaintiff's motion for judgment". The point does not meet the requirements of Rule 418, Texas Rules of Civil Procedure. It encompasses any and every error committed by the trial court, and therefore means nothing. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (1957); Humber v. Morton, 448 S.W.2d 494 (Tex.Civ.App. —Amarillo 1969, writ ref'd n. r. e.); Tindall v. Tacconelly, 328 S.W.2d 909 (Tex. Civ.App.—San Antonio 1959, writ ref'd n. r. e.). The point is insufficient to direct our attention to any particular reason why judgment should have been rendered for plaintiff. Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 941 (1956).

■ Although we hold that the point is too general to comply with Rule 418, we shall discuss the grounds, as we understand them, on which plaintiff relies as disclosed in his statement and argument to determine whether reversible error is shown. Fambrough v. Wagley, 140 Tex. 577, 169 S.W. 2d 478 (1943); Holzapfel v. Brueggman, 404 S.W.2d 916 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.). Plain-

tiff's argument in support of a reversal and rendition under his first point is based on a chart which appears in his brief. But, he does not refer this Court to the pages in the record where the figures set out in the chart were offered into evidence. He has not located the source of the items used to construct the chart relied upon by him as evidence to establish his point of error. The brief does not meet the test imposed by Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197, 201 (1956). Such failure, of itself, would justify our refusal to consider the chart in support of plaintiff's contention. Weeks v. Heinrich, 447 S.W.2d 688, 696 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.); Hamon v. Texas & New Orleans Railroad Company, 382 S.W.2d 155 (Tex.Civ.App.—Tyler 1964; writ ref'd n. r. e.).

■ Rule 301, T.R.C.P. requires that the judgment conform to the verdict, unless that trial court, upon proper motion and notice, renders judgment non obstante veredicto if a directed verdict would have been proper, or, upon like motion and notice, disregards any jury finding that has no support in the evidence. The motion which was filed by plaintiff did not request that the court disregard any jury finding. Consequently, in the absence of any motion to disregard the jury findings in response to Special Issues Nos. 5, 7 and 10, the trial court was without authority to disregard such findings. Cunningham v. R. W. McPherson & Associates, Inc., 392 S.W.2d 145 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); Waters v. Bruner, 355 S.W.2d 230 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.).

Plaintiff's motion for judgment, if it can be considered at all, can only be considered as a motion for judgment non obstante veredicto. Therefore, plaintiff had to demonstrate that there was no evidence of probative value upon which the jury could have made the aforesaid findings. In determining whether plaintiff has met his burden, this Court may "consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result." Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 363 (1957).

■ Even if we treat the chart and the testimony referred to by plaintiff in his argument and statement as being evidence in support of his point, such evidence does not entitle plaintiff to judgment as a matter of law for any of the sums of money prayed for in his motion for judgment. Plaintiff failed to establish that there was a surplus remaining unspent in any fund that should have been set aside for research and development. He failed to prove the amount of money that was spent on research and development in any given year. Defendants' testimony is that money was spent on research and development in each of the affected years, that such costs were included as an expense item in the year incurred, and that the amount spent on research and development exceeded the amount required by the contract to be set aside for that purpose. The "net profits" for the years shown by the charts do not, standing alone, afford a means for determining the amount of money, if any, to which plaintiff is entitled pursuant to paragraph 6 of the contract. Until the exact sum of money spent on research and development is ascertained, it is impossible to determine the "surplus remaining", if any, in that fund.

While it was conclusively established by the evidence that defendants did not set aside, by actual deposit or by bookkeeping entry, a research and development fund, that failure alone did not entitle plaintiff to judgment as a matter of law. He needed to go further. He was required to prove that the failure to create the fund damaged him, and he had to establish by competent proof the amount of his damages. Gulf Coast Investment Corporation v. Rothman, 506 S.W.2d 856 (Tex.Sup. 1974). Here, plaintiff failed to prove that

he was damaged by defendants' failure to create such a fund, or if damaged by such failure, the amount of his damages. The aggregate of "accrued wages", if any, owed to plaintiff was not conclusively established. The evidence does not show as a matter of law that plaintiff had not been paid the full amount of compensation due him (25% of the net profits), with or without taking the cost of the lathe into consideration.

Plaintiff's motion for judgment was properly overruled. The motion cannot be construed as a motion to disregard the jury findings on the ground of no evidence. Plaintiff is not entitled to judgment notwithstanding the verdict. The point, after giving due consideration to the statement and argument thereunder, is insufficient under the briefing rules. Accordingly, plaintiff's first point of error is overruled.

We next consider plaintiff's second and third points of error, both of which deal with the submission of Special Issue No. 5. That issue, and the answer thereto, reads as follows:

### "SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that as of May 18, 1972, there was any surplus remaining unspent out of the sum which was to be allocated for Research and Development under the contract of May 29, 1967?

Answer: 'There was a surplus' or 'There was not a surplus.'

Answer: There was not a surplus."

Plaintiff contends in his second point that there was no evidence to support the submission of the issue, and in his third point that since it was undisputed that there was no fund set aside for research and development that the submission of the issue constituted a comment on the weight of the evidence.

The "sum" referred to in the issue is obviously the 25% of the net profits called for in paragraph 6 of the contract. The issue only inquired about whether or not there was any surplus remaining unspent in the money that was to be allocated for research and development. Plaintiff's testimony, when considered as a whole, clearly infers that there was a surplus remaining unspent out of the net profits for the years 1968, 1969, and 1970 which should have been reserved to such fund. Defendants' testimony is otherwise. There was evidence to support the submission of the issue.

■ If plaintiff is correct in his assertion that it was error to submit Special Issue No. 5 (because it constituted the submission of an undisputed fact and amounted to a comment on the weight of the evidence), the error was harmless. Rule 434, T.R.C.P.

■ The submission of an undisputed fact may not necessarily be prejudicial. In fact, Rule 272, T.R.C.P., as amended, effective September 1, 1973, no longer contains an admonishment to submit only controverted issues of fact. Nevertheless, even before the amendment of Rule 272, it was held that the burden is upon the appellant to show, considering the entire record, that the submission was harmful and constituted reversible error. American Petrofina Company of Texas v. Ray, 383 S.W. 2d 616 (Tex.Civ.App.—Eastland 1964, ref'd n. r. e.); Frank v. Walton, 326 S.W.2d 295 (Tex.Civ.App.—Texarkana 1959, ref'd n. r. e.).

Special Issue No. 4 inquired as to the amount of money, if any, that plaintiff should have received as additional compensation for 1968, 1969, and 1971, as a result of defendants' failure to reserve in a separate account a fund to be utilized solely for research and development. Although the jury failed to answer that issue, plaintiff does not complain of its failure to do so, and when the record in its entirety is considered, we do not believe that the submission of Special Issue No. 5 brought

about the rendition of an improper judgment.

Even if it be deemed that the submission of the issue is a comment on the weight of the evidence, the comment is so weak that it amounts to no comment at all and is harmless. See Mason v. Yellow Cab & Baggage Co., 153 Tex. 344, 269 S.W.2d 329 (1954); Indemnity Ins. Co. of North America v. Carrell, 318 S.W.2d 744 (Tex. Civ.App.—Waco 1958, writ ref'd n. r. e.). Viewing the court's charge as a whole, we think it is unreasonable and unlikely that the jury was misled by the submission of Special Issue No. 5. Plaintiff's second and third points are overruled.

This brings us to a consideration of plaintiff's fourth and fifth points of error. He asserts, in his fourth point, that the trial court erred in refusing to admit evidence of defendant's acknowledgment that they were indebted to plaintiff in the sum of $5,000.00 as of October 31, 1970. In his fifth point, he contends that the court erred in overruling his motion for judgment since the undisputed evidence showed that defendants had paid plaintiff only $1,500.00 of the $5,000.00 that they owed him as of October 31, 1970. Neither point can be sustained.

■ A discussion was had in early May, 1971 between plaintiff and the defendants concerning the amount of money that plaintiff claimed was due him following the close of business for the fiscal year which ended on October 31, 1970. In connection therewith, plaintiff testified:

"We reached an agreement . . . I accepted on the basis that I thought I would get the money right then. I accepted and settled for an additional $5,000.00 . . . In order to get anything, I agreed to settle for five thousand."

Plaintiff was then queried as to whether the $5,000.00 was in connection with a settlement agreement or with the contract on which he had brought suit. Plaintiff answered: "We'll go by the contract";

whereupon, counsel for defendant moved that all testimony concerning a settlement agreement be stricken from the record and that the jury be instructed to disregard that testimony. The motion was granted and the jury was so instructed. Counsel for plaintiff stated: "We have no objection". Later on in the trial, the defendant Billy Pugh, on direct examination, testified that he offered plaintiff $5,000.00 "whether he had it coming or not" if he would go back to work. The record is not clear from Pugh's testimony if the offer was made in settlement of past differences or whether it was made as an inducement for plaintiff to resume work.

On cross-examination, Billy Pugh, identified a letter, dated May 14, 1971, addressed to Billy Pugh Company, Inc., that was written by Bill Newby, an accountant for the company. There is no evidence that plaintiff received a copy of the letter. In explaining why plaintiff was offered the $5,000.00, Pugh said:

". . . I made the statement to Bill Newby and Captain Bookout, 'Look, let's get up $5,000.00 out here and give Captain Bookout on coming sales', hoping that he would go back to work and get back to his old self, get out and sell, because our sales had just gone down to zero."

Plaintiff then offered the letter into evidence, and in doing so, told the court:

"I'm not offering it for the purpose of proving settlement. He's the one that brought it up. He opened the door . . . I'll show it as another agreement that was brought out."

Defendant objected to the introduction of the letter into evidence. The jury was retired and the letter was read to the court. Pertinent provisions thereof read as follows:

"In accordance with the agreement reached during our conference with T. H. Bookout and you on May 13, '71, we record additional $5,000.00 payment to Bookout for services rendered during the

fiscal year ending October 30th, '70. It is our understanding that the payment in full and complete satisfaction to any claims that T. H. Bookout may have against Billy Pugh and Company under the terms of the memorandum agreement, dated May 29, '67, between Billy Pugh and T. H. Bookout."

The court sustained defendant's objection. Plaintiff argues that the letter and testimony of Pugh on cross examination was admissible to "show the continued default on the part of Pugh that brought about the final argument of May 18, 1972, resulting in the termination of Bookout's development". We do not agree.

Plaintiff, in his original petition (which constituted his trial pleading), sued for damages allegedly resulting from the claimed breach of contract, not for damages resulting from a breach of any purported settlement agreement, if any, evidenced by the letter of May 14, 1971. He made no attempt to amend his petition by a trial amendment.

Generally, a party suing upon a contract must recover upon the identical contract alleged, or not at all. Mason v. Kleberg, 4 Tex. 85 (1849); Giant Mfg. Co. v. Davis, 132 Tex. 220, 121 S.W.2d 590 (1938, opinion adopted); Ryan v. Thurmond, 481 S.W.2d 199 (Tex.Civ.App.—Corpus Christi 1972, ref'd n. r. e.). In the instant case, the letter was properly excluded since there was no pleading that plaintiff recover damages for the breach of a purported settlement agreement evidenced by the testimony of either plaintiff or Pugh or by the letter.

If the questions asked by counsel for defendants of the witness Billy Pugh on direct examination were improper, plaintiff should have objected to the questions and requested that the answers be disregarded. He did not do so. The fact that such questions were asked did not authorize plaintiff to introduce improper rebuttal evidence. It has long been settled that "the fact that improper evidence was admitted without objection did not authorize the ad-

mission of improper evidence, even in rebuttal, when objection was made to it". Dolsen v. De Ganahl, 70 Tex. 620, 8 S.W. 321 (1888). Here, defendants timely objected to the introduction of the letter into evidence.

We again advert to the chart contained in plaintiff's brief in connection with our disposition of point five. That chart shows that plaintiff is entitled to a judgment for research and development funds not expended in the amount of $11,465.61. The same chart shows that plaintiff was actually paid $27,000.00 for the years 1968 to 1972, while his ¼th of the net profits was $25,644.07. In this state of the record, when all the evidence is reviewed in the light most favorable to defendant, plaintiff's contention that he is entitled to judgment as a matter of law in the amount indicated in his point five cannot be sustained. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962). Plaintiff's fourth and fifth points are overruled.

The judgment of the trial court is affirmed.