CITY OF DENTON, Texas, Appellant,

v.

Clayton MATHES et al., Appellees.

No. 17646.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 3, 1975.

Rehearing Denied Oct. 31, 1975.

Coleman, Philips & White, and Earl L. Coleman, Denton, for appellant.

Kelsey & Wood, and R. William Wood, and Whitten & Loveless, and Curtis M. Loveless, Denton, for appellees, Clayton Mathes and wife Dorothy Holden Mathes.

Lancaster Smith, Dallas, John L. Sullivan, Denton, Harvey L. Davis, Dallas, for appellee, Pargas.

## OPINION

SPURLOCK, Justice.

Cornelius Holden, as next friend for his daughter, Dorothy Holden, brought suit against Pargas, Inc., for damages for personal injuries resulting from a collision between a motorcycle on which she was riding as a passenger and a truck being driven by an employee of Pargas at an intersection in the City of Denton, Texas, where the traffic was controlled by a traffic control system of lights installed and operated by the City of Denton.

Pargas, as third party plaintiff, sued the City of Denton, charging negligence of the City of Denton in its operation of the traf-

fic control signals and asked for contribution or indemnity from the City of Denton.

Clayton Mathes, the operator of the motorcycle, had also filed suit, and after the marriage of Miss Holden and Mathes subsequent to the accident, these suits were consolidated and tried.

Upon answers to issues submitted to the jury, the court rendered judgment in favor of the plaintiffs and against Pargas and the City, jointly and severally, and judgment in favor of Pargas against the City for full indemnity. The City has appealed.

We affirm.

On August 18, 1972, these plaintiffs were proceeding south on South Elm Street on a green traffic signal light when the driver for Pargas, driving a pickup truck and coming from the opposite direction, made a left turn into them. A vehicle travelling south on South Elm Street would be on a one-way southbound street until the driver reached its intersection with Eagle Drive, at which point the name changed to Fort Worth Drive and two-way traffic began.

About two months before the collision the City of Denton had installed a new traffic control device and changed the sequences. At one point in the new sequence, traffic proceeding south on Elm had a green light indicating that traffic was allowed to proceed south, and the signal facing traffic going north was changed so that a vehicle preparing to turn left onto Eagle would face a red light with a green arrow.

Immediately prior to the collision Mr. Mathes slowed the speed of his motorcycle to make sure that he could stop in the event the green light changed to red before he arrived at the intersection. At that time the Pargas truck was going very slowly, apparently stopping. When the light facing Mathes remained green as he entered the intersection he accelerated slightly. The driver of the Pargas truck, going in the opposite direction had slowed for the red light facing him but before he stopped a green left-turn arrow appeared in the red light indicating to him that he could make a

left turn, which he did, striking the motorcycle with his left head light and fender. Mrs. Mathes was thrown from the motorcycle and struck a city owned vehicle occupied by an assistant warrant officer of the City of Denton who was then on duty.

Mr. William Moore, Traffic Control Engineer for the City of Denton, stated that prior to the change in the traffic light on June 1, 1972, the traffic lights were in conformity with the 1971 National Manual. This manual went into effect in Texas on June 1, 1972. After this manual went into effect, the City, under Mr. Moore's direction, had the lights changed so that they would not then conform with state law which adopted the 1971 National Manual. He stated that: lights remained in that condition until the date of the accident; the signal sequence in question permitted a car going south to come in conflict with a vehicle coming in the opposite direction which was making a left turn on a red light with green error; and each of the drivers of the vehicles here involved would then assume he had the right-of-way and would not know the signals would permit the vehicles to come in contact with one another.

The witness Moore testified that the City was obligated to comply with this manual. In addition, he admitted that under existing law at the time of the collision such signal should not be used when a two-way street merged into a one-way street and that the City was bound by the manual. He admitted that: no warning signals were posted advising the travelling public of the danger involved; this was the only signal light that functioned in this manner in the City; it would take from one to two days to change the lights so that they would conform with existing law; he had been in the traffic department of some cities prior to his present position; and at the time of the accident he was a college student majoring in economics.

The driver for Pargas testified that he saw plaintiffs proceeding toward him and thought they would stop because they

would surely have a red light facing them. He then ceased looking toward the approaching motorcycle and looked to his left and proceeded until the collision occurred.

In response to special issues the jury found that the driver of the Pargas truck failed to keep a proper lookout which was a proximate cause of the occurrence in question; he was not driving at a greater speed than a person using ordinary care would have driven; and that he did not turn left at a time when a person of ordinary care would not have done so.

The jury was given the following definition of "actual notice":

". . . actual notice embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed."

The jury answered "We do" to each of the following issues having to do with actual notice:

"Issue No. 7: Do you find from a preponderance of the evidence that THE CITY OF DENTON, at or near the time of the collision in question, had actual notice that CLAYTON MATHES received some injury therein?

"Issue No. 8: Do you find from a preponderance of the evidence that THE CITY OF DENTON, at or near the time of the collision in question, had actual notice that DOROTHY HOLDEN MATHES received some injury therein?

"Issue No. 9: Do you find from a preponderance of the evidence that THE CITY OF DENTON, at or near the time of the occurrence involved herein had actual notice of the material facts pertaining to the time, manner and place of the collision involved in this suit and the personal injuries sustained by CLAYTON MATHES and DOROTHY HOLDEN MATHES?"

The jury also answered "We do" to these issues:

"Issue No. 10: Do you find from a preponderance of the evidence that at the time and on the occasion in question the Defendant, City of Denton, Texas, used a steady green arrow indication on Fort Worth Drive which would be in conflict with other vehicles crossing the intersection?

"Issue No. 11: Do you find from a preponderance of the evidence that such use was negligence?

"Issue No. 12: Do you find from a preponderance of the evidence that such use was a proximate cause of the occurrence in question?

"Issue No. 13: Do you find from a preponderance of the evidence that the Defendant, City of Denton, Texas, failed to correct said conflicting traffic condition within a reasonable time after notice of said condition?

"Issue No. 14: Do you find from a preponderance of the evidence that on the occasion in question the defendant, City of Denton, Texas, installed at the intersection in question arrows that were used on the two-way Fort Worth Drive approach to the one-way Elm Street approach which gave a false impression of a protected turning movement?

"Issue No. 15: Do you find from a preponderance of the evidence that such installation was negligence?

"Issue No. 16: Do you find from a preponderance of the evidence that such installation was a proximate cause of the occurrence in question?

"Issue No. 17: Do you find from a preponderance of the evidence that the defendant, City of Denton, Texas, failed to correct said false impression within a reasonable time after notice thereof?

"Issue No. 18: Do you find from a preponderance of the evidence that the defendant, City of Denton, Texas, failed to provide any warning sign or traffic device at the intersection in question that northbound traffic was permitted to turn left on a green arrow at the same time southbound

traffic was permitted to pass through the intersection in the opposite direction on a green indication?

"Issue No. 19: Do you find from a preponderance of the evidence that such failure was negligence?

"Issue No. 20: Do you find from a preponderance of the evidence that such failure was a proximate cause of the occurrence in question?

"Issue No. 21: Do you find from a preponderance of the evidence that the defendant, City of Denton, Texas, failed to correct said absence of any warning sign or traffic device within a reasonable time after notice thereof?"

The jury's answers to the above issues are amply supported by the evidence in the record. No answer was against the great weight and preponderance of the evidence.

This appeal is predicated upon 9 numbered points of error, some of which points contain more than one point of error, and consume over 10 pages of the brief.

■ The appellees object to this Court considering five of the points of error for the reason they are multifarious, duplicitous, argumentative, and present abstract propositions of law in violation of Rule 418, T.R.C.P., and cites as authority *Smith v. Brown Express,* 343 S.W.2d 550 (San Antonio Civ.App., 1961, ref. n. r. e.), and *Kirkman v. Amarillo Savings Ass'n of Amarillo,* 483 S.W.2d 302 (Amarillo Civ.App., 1972, ref., n. r. e.).

Pargas further objects to the consideration of all of appellant's points of error because none refer to pages of the transcript where supporting assignments of error may be found. Rule 418, T.R.C.P.

Pargas further objects to each statement under appellant's points because they contain extensive arguments and conclusions and failed in a number of instances to refer to pages of the record where the testimony may be found. Rule 418, T.R.C.P. It cites as authority: *Coastal Transmission Corporation v. Lennox,* 331 S.W.2d 778 (San An-

tonio Civ.App., 1960, no writ hist.); *Bookout v. Pugh,* 513 S.W.2d 281 (Corpus Christi Civ.App., 1974, no writ hist.); *Rosas v. Shafer,* 411 S.W.2d 809 (San Antonio Civ. App., 1966, ref., n. r. e., 415 S.W.2d 889, Tex.Sup., 1967. In the per curiam opinion the Supreme Court, in refusing a writ, stated the Court of Civil Appeals reached a right conclusion on the merits but that the points of error should have been considered.)

In *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943) it was stated that the Court would pass on the sufficiency of the "points" in light of the statement and arguments thereunder, even though in that case the brief was long and violated our briefing rules in several material particulars. This Court has carefully read the lengthy transcript and the entire statement of facts contained in two volumes, and appellant's brief consisting of 82 pages, and correlated same by cross references and will in this instance pass upon the asserted errors contained in the rather verbose points of error.

The Texas Tort Claims Act, Article 6252–19, V.A.T.S., herein referred to as "Act", defines what is meant by government and units of government. This definition includes a city. Other pertinent provisions are as follows:

Section 3 of the Act, stated in summary form, provides that a governmental unit is liable for money damages for personal injuries or death caused by the negligence of the City acting through its employees in three general areas: the use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.

Section 4 provides for a waiver of sovereign immunity.

Section 13 provides as follows: "The provisions of this Act shall be liberally construed to achieve the purposes hereof."

Section 14 contains 12 exemptions, the pertinent exemptions are as follows:

"(7) Any claim based upon the failure of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the discretion of the unit of government, its decision not to do the act, or its failure to make a decision thereon, shall not form the basis for a claim under this Act.

"(9) Any claim based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion or arising out of the failure to provide, or the method of providing, police or fire protection.

"(12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, or any claim arising from the removal or destruction of such signs, signals or devices by third parties except on failure of the unit of government to correct the same within such reasonable time, after actual notice.   .   .   ."

The section in effect at the time of the collision, concerning notice of death or notice of injury, is as follows:

"Sec. 16.   Except where there is actual notice on the part of the governmental unit that death has occurred or that the claimant has received some injury, any person making a claim hereunder shall give notice of the same to the governmental unit against which such claim is made, reasonably describing the injury claimed and the time, manner and place of the incident from which it arose, within six months from the date of the incident. Provided, however, except where there is such actual notice, charter and ordinance provisions of cities requiring notice within a charter period permitted by law are hereby expressly ratified and approved."

Section 20 contains a general repeal clause which provides: "All laws or parts of law, and all enactments, rules and regulations or any and all units of government, and all organic laws of such units of government, in conflict herewith are hereby repealed, annulled and voided, to the extent of such conflict."

The record reflects that the City, acting through its traffic department, installed the traffic light in question in violation of state law. Shortly after the installation numerous persons called the Traffic Department, Engineering Department, and Police Department complaining of the dangerous condition caused by the installation and maintenance of such lights. This continued for a period of 6 weeks prior to the collision here involved. A gasoline station operator whose place of business was at this intersection testified that after the traffic signal was changed to the condition in question he often heard the "screech of tires and people cussing each other", and that automobile collisions occurred and people were wondering what was wrong with the lights. This witness called the City repeatedly advising it of the dangerous condition, as did his wife and several of his customers. He testified that the traffic light condition caused the drivers entering the intersection to play a game of Russian roulette. There were no warning signals advising people of the dangerous conditions.

Mr. Moore, Traffic Control Engineer for the City, admitted having received such phone calls over a period of time prior to the collision, and had received a copy of the traffic report of the collision here involved.

The assistant warrant officer, driving a City car which was slightly damaged in the collision, proceeded to the City attorney's office and had the City attorney's secretary complete an accident report which was forwarded to the State of Texas. There was admitted into evidence a part of the accident report prepared by the City's investigating officer and his partner shortly after the accident occurred which was filed with the City. This accident report showed the details of the physical facts such as measurements of streets, point of impact, posi-

tion of vehicles, and the fact that each of the plaintiffs was injured. This witness discussed the accident shortly after it occurred with the City attorney at which time he informed the City attorney of the light situation and the fact that both plaintiffs suffered serious injuries.

In *Sparkman v. Maxwell,* 519 S.W.2d 852 (Tex.Sup., 1975), that court had before it a fact situation very similar to one in this case. The City of Wichita Falls had installed traffic signals similar to the ones here involved which caused the collision. In that case the traffic engineer had ordered the signals installed; a police officer noticed the confusion in the traffic caused by the lights. He notified the traffic engineer that something was wrong with the lights, the traffic engineer who had installed the lights also observed the signal and the confusion it was causing several days prior to the collision. Our Supreme Court held that during the period prior to the collision the City had notice in ample time to alter or remove the signal prior to the date of the collision. In other words, such notice was notice to the City in compliance with the notice provisions of the Act. That court further held that: the City was not immune from liability because the signal in question was installed in accordance with the exercise of a legislative function which was exempt from the Act by specific provisions (Subdivision 12 of Section 14); the 1971 National Manual on Uniform Traffic Control Devices for Streets and Highways became effective in Texas on June 1, 1972, after the accident in that case; and the condition of the traffic lights indicated above created a risk of harm to travelling public and the City's failure to correct the traffic signal within a reasonable time after notice was received subjected it to liability under the Texas Tort Claims Act.

The Sparkman case disposes of most of the points of error asserted by the City of Denton.

The first point asserts error by the court in granting judgment for plaintiffs and Pargas because there is no evidence that the plaintiffs nor Pargas had given notice to the City within 6 months of the collision that they *intended* to file a claim against the City. It is the contention of the City that even if the City had immediate actual knowledge of the collision and the injuries sustained, and that the City's negligence contributed to the injuries, the plaintiffs and Pargas each were required to give a formal notice to the City within 6 months of the date of the collision that they *intended* to file a claim against the City, and the Court erred in not rendering judgment for the City.

By its second point the City asserts error in that since plaintiffs had no cause of action against the City, Pargas had no right of indemnity; that therefore the court erred in not rendering a "take nothing judgment" in favor of the City and in granting Pargas indemnity.

The general principles of law concerning indemnity is stated by Professor Gus M. Hodges in 26 Texas Law Review 150, as follows: "When there are two tortfeasors, either or both of whom are liable to an injured third person, but one of them has breached a duty which he owed both to his co-tortfeasor and to the injured third person, then the tortfeasor who, to his co-tortfeasor, is blameless, should be allowed indemnity."

This same principle of law was well stated in the following cases: *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949), and *Austin Road Company v. Evans,* 499 S.W.2d 194 (Fort Worth Civ.App., 1973, ref. n. r. e.).

■ The City had immediate ample notice that the claimants were seriously injured, that the maintenance of the traffic signal device was probably a cause of the collision and injuries, and the names and addresses of all the parties involved. Therefore, the City had actual notice within the meaning of Section 16 of the Act.

We therefore hold that the plaintiffs, under these circumstances, were not required

to file a claim with the City within 6 months describing the injury, the time, manner and place of the incident stating therein they *intended* to file a claim against the City.

The record further reflects that the defendant Pargas, after receiving a citation in the case, immediately filed an answer and sought indemnity or contribution from the City and described the negligence of the City in detail and immediately served the City with such pleadings.

By its third point, error is claimed in that Pargas never gave such notice within 6 months and that the City had no actual notice that Pargas would make a claim against the City.

It is undisputed in the record that Pargas, Inc. gave actual and written official notice to the City within 30 days after a claim was made by the plaintiffs on Pargas, Inc., which was the first notice to Pargas, Inc., that it had a cause of action against the City.

*Harris County v. Dowlearn*, 489 S.W.2d 140, 146 (Houston Civ.App., 14th Dist., 1972, ref., n. r. e.), is a suit in which the County was being sued, the County asserted that the plaintiffs had no cause of action because they had not complied with Art. 1573, V.A.T.S., which generally provides that a County may not be sued on a claim unless the claim is first presented to the Commissioner's Court for allowance, and its audit and allowance is refused or neglected and not allowed. That court held that the Texas Tort Claims Act "provides for the notice requirements, and sec. 16 of the Act is clearly intended to be an exclusive notice requirement for purposes of bringing suit under the Act. . . . Moreover, the Act contains a repealer clause which repeals all laws in conflict with Art. 6252–19 to the extent of such conflict. (sec. 20)."

It is our opinion that Section 20 of the Act makes ineffective and repeals all ordinances, city charter provisions and statutes in conflict therewith. We hold notice requirement of the Act is an exclusive notice requirement for the purposes of bringing suit under the Act. We hold plaintiffs and Pargas complied with the notice provision of the Act.

These points are overruled.

By its fourth point the City asserts that it had governmental immunity except in limited situations such as claims growing out of death and from injuries sustained and that Pargas had no right of indemnity under the Act since the theory of indemnification is not based on such a claim.

In *Flores v. Norton & Ramsey Lines, Inc.*, 352 F.Supp. 150 (W.D.Texas, 1972) a suit arose as the result of a collision between two trucks. The defendant interpleaded the Texas Department of Public Safety as a third party defendant claiming that the collision was caused by the Texas Department of Public Safety because they had stopped the plaintiff on the highway at a license and weight inspection station and had failed to make proper provision for removing from the highway the truck they had stopped. There the court held that the Texas legislature had expressly waived sovereign immunity under the Texas Tort Claims Act and that the defendant had alleged a good cause of action for indemnity or contribution in the event that it was found negligent in the main cause of action. The court stated as follows: "Section 13 of the Texas Act states: 'this Act shall be liberally construed to achieve the purposes hereof.' Thus, any ambiguity in the Act ought to be construed in favor of the claimant."

Where the Act waives governmental immunity and no exclusion or express provision limits this immunity, the general law of this State will apply to the litigants in the same manner that it would apply to individuals.

We hold the right of indemnity is available under the Act even though Pargas sustained no personal injuries. This point is overruled.

■ By its fifth point the City contends the traffic signals were legally installed pursuant to the City's legislative function and its police power and it was protected by the principles of governmental immunity.

At the time the Sparkman case was tried the State had adopted the 1971 National Manual but it had not gone into effect. The traffic control system here involved did conform to that manual but was changed after June 1, 1972, so that it became a non-conforming traffic signal thereafter and was in violation of the National Manual which was adopted by the State Highway Commission. The accident involved in the Sparkman case occurred on April 14, 1972, the manual went into effect June 1, 1972. The accident here involved occurred on August 18, 1972, after said manual went into effect.

We specifically hold that the traffic signals were illegally installed and that Subsection 12 of Section 14 of the Act controls. *Sparkman v. Maxwell*, supra.

The City asserted additional error by its fifth point in that it claims that the City, because of its legislative function and police power, could install the light in any manner which it desired, therefore, it was a governmental function and the City enjoyed immunity. These points were foreclosed against the City in the Sparkman case.

■ By its eighth point the City asserts that the court erred in two respects: in that the court's definition of notice was erroneous, and the refusal to give the City's requested definition of "actual notice"; for the reason that the given definition omitted the concept that the claimants must give notice that they *intended* to assert a claim against the City. The requested definition contained this concept.

This point is overruled because of the principles of law decided in the Sparkman case and for the additional reason that this definition was approved in the case of *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286 (1951).

■ By its point nine the City asserts error by the court in excluding from evidence a City ordinance which authorized and provided for the operation of the traffic light.

The installation, operation, and maintenance of the traffic signal in question was in violation of state law and therefore the ordinance was ineffective because it was in conflict with state law. *Harris County v. Dowlearn*, supra, and Section 20 of the Act. Therefore, it was not error to refuse to admit such City ordinance in evidence. We overrule this point.

By its sixth point the City asserts the Court committed errors in permitting the witness McLeroy to interpret the meaning of the National Manual on Uniform Traffic Control Devices and the trial court commented on the weight of the evidence in that he referred to the witness as an expert.

The record reflects that the attorney for the City referred to such witness as an expert and thus admitted in the presence of the jury that the City recognized him as an expert.

This witness was regional traffic operations engineer for the Federal Highway Administration in Region 6, Fort Worth, Texas. He was a graduate engineer of Texas Tech. He had worked 17 years for cities in Texas in the traffic engineering departments. Part of his duties for the Federal government was to assist municipalities and help them solve traffic engineering problems. He served the cities as a consulting engineer in connection with their traffic engineering problems. He had authority to interpret the National Uniform Traffic Control Act described above. He testified without objection that the National Manual was in effect by reason of Texas law adopting same. He also testified without objection as to the interpretation of both the Act and Art. 6701d, V.A.T.S. (Uniform Act Regulating Traffic on Highways), as applied to the facts in this case. He further testified

without objection the date the manual went into effect by authority of Texas law.

The record reflects the Court stated that he overruled the objection because this witness was an expert. The appellant objected as follows: "We take an exception to the court's comment as to the—I don't think the court intended to, but he is an expert within the—you mean he's qualified as an expert."

No motion for mistrial or motion was made to instruct the jury not to consider the remark made by the court. During the course of the trial appellant's attorney, in referring to this witness, stated: "He's (referring to opposing counsel) already qualified him as an expert in order to give an opinion on the facts."

In several instances this witness, in response to a question, interpreted the state law and the manual, the witness giving his opinion, then appellant's attorney objecting and the court sustaining the objection; but thereafter there was no motion requesting the court to strike the answer from the record and the jury not to consider it.

█ We hold the claimed error was waived. *Ka-Hugh Enterprises, Inc. v. Fort Worth Pipe & Supply Company*, 524 S.W.2d 418 (Fort Worth Civ.App., 1975, writ ref., n. r. e.).

It was stated in *Battles v. Adams*, 415 S.W.2d 479 (Austin Civ.App., 1967, ref., n. r. e.) that, "Since the objection to this testimony was made after its admission and no motion to strike having been made, the objection was waived and the testimony was before the court for all that it is worth."

█ If error was committed it was not such an error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P.

We overrule this point.

By its seventh point the City contends error was committed because the trial court admitted into evidence on the issue of actual notice only a part of the police report, and for the additional reason that the court deleted from the police report a portion which contained an opinion by the police officer that the Pargas vehicle failed to yield the right-of-way and the additional point that no other factor was given in the report as causing the accident.

█ The opinion of a police officer who was not a witness to the accident as to the cause of the accident was hearsay. *Flores v. Missouri-Kansas-Texas Railroad Company*, 365 S.W.2d 379 (Dallas Civ.App., 1963, ref., n. r. e.). It was not error for the court to refuse to admit this portion of the police report.

█ It was not error under the facts in this case for the court to admit in evidence that portion of the police report showing the names of the parties involved, the dimensions of the streets which were measured by the investigating police officer, the point of impact as shown by the debris, the place where the vehicles came to rest, the fact that plaintiffs sustained serious injuries, that the Pargas vehicle sustained damages, and the City vehicle, occupied by an assistant warrant officer for the City, sustained damage when struck by the body of one of the plaintiffs when she was thrown through space by the force of the impact.

The police officer who made the investigation of the accident was a witness and testified to the same facts without objection. In addition thereto the court instructed the jury they could consider that portion of the police report admitted in evidence solely on the issue of whether the City had notice of the occurrence. This was a predicate also for material testimony admitted without objection that the coordinator for the traffic department for the City had seen this report and a copy had been filed in his office. If any error was committed it was not such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition

of an improper judgment. Rule 434, T.R.C.P.

■ Appellee, Dorothy Holden Mathes, asserts by counterpoint that she is excused from compliance with the notice requirements because of her minority.

The record reflects that Dorothy Mathes was 19 years of age at time of the occurrence. She filed this suit on May 11, 1973, as a minor, through her father as next friend. She married the other plaintiff on May 26, 1973.

By Article 5923b, V.A.T.S., the age of majority was lower from 21 to 18 years of age. This statute became effective August 27, 1973. Therefore, her disability of minority was removed on May 26, 1973, when she married.

She cites as authority the case of *City of Lubbock v. Onley*, 498 S.W.2d 429 (Amarillo Civ.App., 1973, ref., n. r. e., 506 S.W.2d 208, Tex.Sup., 1973. In the per curiam opinion the Supreme Court specifically approved the Court of Civil Appeals opinion in regards to the adequacy of the notice given to the City.) The Court of Civil Appeals, in passing upon this point stated: "The reason for excusing compliance upon proof of the plaintiff's minority is that notice provisions presuppose the existence of a person capable of complying. Since the plaintiff was legally incapable of compliance, he was formally excused therefrom. To hold that a minor, though bringing suit while in minority, must still file a claim upon reaching age twenty-one, would require a useless or superfluous act."

We hold that the notice provision of the Act was complied with as stated above and further hold that because of her minority Dorothy Mathes was excused from the giving of any notice concerning the occurrence prior to the time she filed suit; and was not required to give additional notice within six months after her disability of minority was removed by marriage.

Each of the appellant's asserted errors have been carefully considered and each are severally overruled.

The judgment is affirmed.