LI v FELDT (AFTER SECOND REMAND)

GARCIA v CITY OF JACKSON (AFTER SECOND REMAND)

Docket Nos. 91079, 92057. Argued November 5, 1991 (Calendar Nos. 1-2). Decided May 20, 1992.

Chen Li brought an action in the Washtenaw Circuit Court against the City of Ann Arbor and two of its employees, Kenneth Feldt and John Robbins, alleging that her injury in an automobile collision was caused, in part, by an improperly timed traffic light. The court, William F. Ager, Jr., J., granted summary disposition for the defendants. The Court of Appeals, SAWYER, P.J., and SULLIVAN and E. M. THOMAS, JJ., reversed (Docket No. 93688). The Supreme Court vacated and remanded the case in light of *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139 (1988), which held that MCL 691.1407(1); MSA 3.996(107)(1) mandates an historical approach to determining the existence of exceptions to governmental immunity. On remand, the Court of Appeals, SAWYER, P.J., and BEASLEY and SULLIVAN, JJ., again reversed, finding that there was an historically recognized intentional nuisance exception to governmental immunity (Docket No. 109337). The Supreme Court reversed and remanded the case, finding that there is no intentional nuisance exception to governmental immunity, 434 Mich 584 (1990). On second remand, the Court of Appeals, SAWYER, P.J., and SHEPHERD and SULLIVAN, JJ., still again reversed, holding that both public nuisance and nuisance per se were historically recognized exceptions to governmental immunity (Docket No. 129603). The defendants appeal.

Manuel Garcia, Sr., for himself and as personal representative of the estate of Javier Garcia, deceased, and others, brought an action in the Jackson Circuit Court against the City of Jackson as a result of the drowning of Javier Garcia in the Holton Dam, a city holding pond, alleging nuisance per se and nuisance in fact and claiming that the city had maintained the pond in a

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 163-165, 257-273; Nuisances §§ 35-42, 135.

See the Index to Annotations under Governmental Immunity or Privilege; Nuisances.

dangerous condition when it knew or should have known that drownings were likely to result. The court, James G. Fleming, J., granted summary disposition for the defendant. The Court of Appeals, BRONSON, P.J., and R. B. BURNS, J. (R. C. KAUFMAN, J., concurring), reversed (Docket No. 84513). The Supreme Court, vacated and remanded in light of *Hadfield*. On remand, the Court of Appeals, CYNAR, P.J., and WAHLS, J. (MACKENZIE, J., dissenting), again reversed (Docket No. 109324). The Supreme Court reversed, holding that intentional nuisance was not an historically recognized exception to governmental immunity, 434 Mich 584 (1990). On second remand, the Court of Appeals, CYNAR, P.J., and WAHLS, J. (MACKENZIE, J., dissenting), still again reversed, holding that public nuisance and nuisance per se were historically recognized exceptions to governmental immunity (Docket No. 129602). The defendant appeals.

In separate opinions, the Supreme Court *held:*

There is no public nuisance exception to governmental immunity. In addition, no nuisance per se exception applies in these cases, requiring reversal of the judgments of the Court of Appeals and reinstatement of the trial courts' grants of summary disposition for the defendants.

Chief Justice CAVANAGH, joined by Justices BRICKLEY and MALLETT, stated that there is no public nuisance exception to governmental immunity from tort liability under MCL 691.1407(1); MSA 3.996(107)(1). To whatever extent an exception for nuisance per se may exist, it is not implicated in these cases.

MCL 691.1407(1); MSA 3.996(107) provides for immunity from tort liability for all governmental agencies where they are engaged in the exercise or discharge of a governmental function. Section 7(1) does not modify or restrict the immunity of the state as it existed before July 1, 1965. Under the historical approach mandated by *Hadfield,* the question in this case is whether the claimed exception was clearly recognized in authoritative case law before July 1, 1965. *Pound v Garden City School Dist,* 372 Mich 499 (1964), is properly considered for purposes of § 7(1) analysis because it was decided more than a year before July 1, 1965, and plainly falls within the scope of the amended language of the act. Neither *Pound* nor the other cases relied upon by the plaintiffs established any public nuisance exception to governmental immunity. *Pound* established at most a narrow corollary to the narrow trespass-nuisance exception. Because no basis for a public nuisance exception appears in the case law before July 1, 1965, no such exception

exists under § 7(1). Thus, to whatever extent the plaintiffs in *Li* and *Garcia* properly may have stated claims of public nuisance, such claims are barred by governmental immunity.

A nuisance per se is an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained. Unlike nuisance in fact, nuisance per se is not predicated on want of care, but is unreasonable by its very nature. Neither the operation of the traffic light in *Li* nor the maintenance of the holding pond in *Garcia* can be said to constitute an intrinsically unreasonable or dangerous activity, without regard for care or circumstances. To the contrary, both activities serve obvious and beneficial public purposes and are clearly capable of being conducted in such a way as not to pose any nuisance at all. Thus, regardless of whether nuisance per se might qualify as an exception to governmental immunity, neither *Li* nor *Garcia* presents a colorable claim of nuisance per se.

Justice RILEY concurred only in the result.

Justice BOYLE, concurring, stated that public nuisance is derived from criminal law and much of it remains predicated on violation of statutes. A potential exception to governmental immunity exists where the claim for relief is based on actions of government for those uses of land that constitute an impending danger to persons in the enjoyment of property rights. Nuisance per se is a category or method of proving public or private nuisance. It arises in those exceptionally narrow circumstances where the Legislature or the Supreme Court may label a condition or activity patently unreasonable by its very nature. Such an exception ensures that in those circumstances the state may not circumvent its liability by raising the shield of immunity. Neither *Li* nor *Garcia* presents facts that fall within nuisance per se or public nuisance exceptions.

Justice GRIFFIN, concurring in the result, stated that these cases should be dismissed for failing to fit within any of the five narrowly drawn statutory exceptions to immunity set forth in the governmental tort liability act. Public nuisance is not a statutory exception.

Justice LEVIN, writing separately, agreed with the lead opinion that, to the extent the instant plaintiffs have failed to allege facts raising colorable claims of nuisance per se—and, additionally public nuisance—it is not appropriate to decide the extent of exceptions from governmental immunity therefor.

Further, neither *Li* nor *Garcia* presents a colorable claim of nuisance per se. The activity engaged in by the governmental

defendant did not, in either case, constitute a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained.

Also, the plaintiff in *Li* may not maintain an action founded on a public nuisance exception to governmental immunity, but not for the reasons adopted by the lead opinion in reaching that result.

Taking account of the factual allegations in *Garcia,* it should be held that a common-law public nuisance exception to governmental immunity might provide the plaintiffs in *Garcia* with a cause of action against the City of Jackson, a municipal corporation, and thus the judgment of the Court of Appeals should be affirmed, and the case remanded to the trial court for further proceedings.

At common law, depending on the facts of the case and the jurisdiction in which the case arose, liability for personal injury arising out of the creation or maintenance of a nuisance on government property, even where there was no invasion of private property, was a recognized exception to governmental immunity. The types of nuisance constituting exceptions to governmental immunity were not limited to trespass-nuisance, but encompassed elements of public nuisance, nuisance per se, intentional or absolute nuisance, and attractive nuisance. These formulations were inconsistently labeled, and overlapped to a large degree, but this should not be determinative.

After enactment of the governmental tort liability act, justices of the Supreme Court recognized nuisance exceptions to governmental immunity other than nuisance per se and trespass-nuisance. The absence of clear authority allowing recovery against a governmental entity for maintenance of a public nuisance does not justify the lead opinion's sweeping conclusion that a public nuisance exception did not exist at common law. There is no authority, other than the pronouncement in the lead opinion, to support the intuition that the Legislature intended, in enacting the governmental tort liability act, to allow recovery for trespass-nuisance and, perhaps, nuisance per se, but did not so intend with regard to public nuisance.

The understandable concern that once any substantive exception to governmental immunity is made, any misstep by a governmental entity might subject it to liability does not justify the conclusion that there is no public nuisance exception to governmental immunity. Public nuisance must be clearly defined, and rationally confined by the Supreme Court, so as to prevent circumvention of governmental immunity.

It would be incorrect to hold that every act of negligence on

the part of a municipality may give rise to a nuisance. But the complementary proposition, that an action in nuisance can never be predicated on negligent acts, is equally untenable. A governmental entity ordinarily has no inherent right to obstruct the use of, or create a trap in, a way of necessity. The trespass-nuisance and public nuisance exceptions to governmental immunity include the well-established principle that members of the community may not be impeded from the safe use of ways of necessity, such as public roads and navigable waterways, which have historically been the lines of communication making community possible. Nor may a member of the community be dispossessed by the government of his physical well-being while in a place, such as a public way, where he has a right to be.

Only *unreasonable* obstructions are public nuisances; intrinsically unreasonable or dangerous conditions are nuisances per se. The traffic light that led to disaster in *Li* no doubt was frustrating and annoying, but it was not treacherous, and did not constitute a trap. Unlike *Li*, the allegations of the complaint in *Garcia* state a condition of which the city had notice and that, although not so unavoidably dangerous as to constitute a nuisance per se, was a deadly trap for the decedent.

Reversed.

187 Mich App 475; 468 NW2d 268 (1990) reversed.

190 Mich App 197; 475 NW2d 851 (1991) reversed.

GOVERNMENTAL IMMUNITY — PUBLIC NUISANCE.

   There is no public nuisance exception to governmental immunity from tort liability (MCL 691.1407[1]; MSA 3.996[107][1]).

*Pauline R. Rothmeyer* for the plaintiff in *Li*.

*Mark T. Light* for the plaintiff in *Garcia*.

*R. Bruce Laidlaw,* City Attorney, and *Kristen D. Larcom,* Assistant City Attorney, for the defendants in *Li*.

*Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C.* (by *Charles A. Nelson*), for the defendant in *Garcia*.

Amici Curiae:

   *Frank J. Kelley,* Attorney General, *Gay Secor*

*Hardy,* Solicitor General, *Stewart H. Freeman,* Assistant in Charge, and *Michael C. McDaniel,* Assistant Attorney General, for the Attorney General, Tort Defense Division.

*Smith, Haughey, Rice & Roegge* (by *Craig R. Noland*) for County Road Association of Michigan.

*Bodman, Longley & Dahling* (by *Jerold Lax*) for Michigan Municipal League.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani*), for Michigan Municipal Liability and Property Pool.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for Michigan Municipal Risk Management Authority.

*John A. Braden, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

### AFTER SECOND REMAND

CAVANAGH, C.J. We revisit in these cases the issue of the existence and scope of exceptions to governmental immunity from tort liability under MCL 691.1407(1); MSA 3.996(107)(1). We hold that there is no public nuisance exception to governmental immunity, and that, to whatever extent a nuisance per se exception may exist, it is not implicated by the facts of either case before us.

### I. FACTS AND PROCEDURAL HISTORY

#### A. *LI v FELDT*

Plaintiff Chen Li was injured in an automobile

collision on May 5, 1983, which was allegedly caused, in part, by an improperly timed traffic light operated by the City of Ann Arbor. The defendants before us in *Li* are the city and two of its employees, Kenneth Feldt and John Robbins. Li filed suit on March 11, 1986, and the trial court initially granted summary disposition for the defendants.[1] The Court of Appeals initially reversed in part and remanded for further proceedings regarding Li's claim of intentional nuisance. 162 Mich App 767; 413 NW2d 493 (1987). This Court vacated and remanded in light of *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988), in which a majority of this Court held that § 7(1) mandates an historical approach to determining the existence of exceptions to governmental immunity. 430 Mich 882 (1988).

On remand, the Court of Appeals found that there was an historically recognized intentional nuisance exception to governmental immunity, and again reversed the trial court's summary disposition. 170 Mich App 256; 428 NW2d 36 (1988). This Court granted leave to appeal, 432 Mich 891 (1989), and reversed, reaffirming *Hadfield*'s historical approach and finding that there is no intentional nuisance exception to governmental immunity. 434 Mich 584; 456 NW2d 55 (1990). This Court again remanded the case to the Court of Appeals, to determine whether a public nuisance or nuisance per se exception to governmental immunity existed, and whether either exception applied to the facts presented, "if, and to the extent that, [such issues] were properly raised before the Court of Appeals." *Id.* at 596.

---

[1] Because Li's suit fell outside the two-year statute of limitations applicable to actions under the statutory "defective highways" exception to governmental immunity, see MCL 691.1402, 691.1411(2); MSA 3.996(102), 3.996(111)(2), the applicability of that statutory exception does not arise as an issue in this case.

On second remand, the Court of Appeals held
that the relevant issues had been adequately
raised and preserved in that Court, that both
public nuisance and nuisance per se were histori-
cally recognized exceptions to governmental immu-
nity, that Li had stated a claim of public nuisance
on the facts presented, and that Li's claim of
nuisance per se was sufficiently colorable on the
facts presented to warrant further consideration
by the trial court. 187 Mich App 475, 492; 468
NW2d 268 (1991). The Court of Appeals therefore
reversed again the trial court's summary disposi-
tion. We granted leave to appeal, 437 Mich 1006
(1991), and, for reasons set forth below, we now
reverse again the judgment of the Court of Ap-
peals.

### B. *GARCIA v CITY OF JACKSON*

Plaintiffs' decedent Javier Garcia, a young boy,
drowned on February 26, 1983, after he went
swimming in the holding pond behind the Holton
Dam in Jackson. The pond was connected to the
Grand River by a 2,000-foot-long, five- by ten-foot,
underground conduit, the mouth of which was not
guarded by a grating. Garcia was sucked into the
conduit and dragged through it into the Grand
River, where his body was later found. Another
young boy had drowned in a similar manner at the
Holton Dam in 1981, producing a public outcry. At
the time Garcia drowned, signs had been placed
around the pond warning against swimming; in-
deed, Garcia's friend who accompanied him on
that tragic day warned him against swimming in
the pond. It was not until October 10, 1983, how-
ever, nearly eight months after Garcia's death,
that the City of Jackson began making physical

improvements at the dam site to enhance its safety.

Garcia's father, on his own behalf and as the personal representative of his son's estate, and others, filed suit against the city on June 23, 1983.[2] Garcia's first complaint alleged nuisance per se and nuisance in fact, an amended complaint alleged only nuisance per se, and a second amended complaint alleged only wilful and wanton misconduct. The substance of the allegations remained, however, that the city had maintained the Holton Dam in a dangerous condition, when it knew or should have known that drownings were likely to result. The trial court initially granted summary disposition for the city. The Court of Appeals reversed and remanded, holding that Garcia had stated a claim of intentional nuisance and that intentional nuisance constituted an exception to governmental immunity. 152 Mich App 254; 393 NW2d 599 (1986). This Court, just as in *Li,* vacated and remanded in light of *Hadfield, supra.* 430 Mich 877 (1988).

On remand, the Court of Appeals, one judge dissenting, again reversed the trial court's summary disposition, finding its earlier decision unaffected by *Hadfield.* 174 Mich App 373; 435 NW2d 796 (1989). This Court granted leave to appeal, 432 Mich 891 (1989), and, deciding the case together with *Li,* reversed, holding that intentional nuisance was not an historically recognized exception to governmental immunity. 434 Mich 584; 456 NW2d 55 (1990). This Court, just as in *Li,* remanded the case to the Court of Appeals to determine whether a public nuisance or nuisance per se exception to governmental immunity existed, and whether either exception applied to the facts pre-

---

[2] For convenience, we will henceforth refer to the plaintiffs in *Garcia* in the singular as "Garcia."

sented, "if, and to the extent that, [such issues] were properly raised before the Court of Appeals." *Id.* at 596.

On second remand, the Court of Appeals, again over a dissent, held that the relevant issues had been adequately raised and preserved in that Court, that public nuisance and nuisance per se were historically recognized exceptions to governmental immunity, that "the factual allegations in this case can support the claim of nuisance per se or public nuisance sufficiently to avoid a grant of summary disposition for the defendant," that Garcia should be afforded an opportunity on remand to amend his pleadings to more clearly state the law and facts relied upon, and that the trial court should then determine whether Garcia had adequately pleaded a claim of public nuisance or nuisance per se. 190 Mich App 197, 201-202; 475 NW2d 851 (1991). The Court of Appeals therefore reversed again the trial court's summary disposition. We granted leave to appeal and ordered the case considered together with *Li,* 438 Mich 863 (1991), and, for reasons set forth below, we now reverse again the judgment of the Court of Appeals.

## II. ANALYSIS

### A. PUBLIC NUISANCE

It has become almost *de rigueur* to begin a discussion of nuisance, as did the Court of Appeals in *Li (On Second Remand),* 187 Mich App 480, by quoting Justice TALBOT SMITH's typically apt description of it as "the great grab bag, the dust bin, of the law." *Awad v McColgan,* 357 Mich 386, 389; 98 NW2d 571 (1959). The Court of Appeals in *Li (On Second Remand)* also noted Prosser and Kee-

ton's descriptions of nuisance as an
" 'impenetrable jungle' " and " 'all things to all
people,' " 187 Mich App 480, quoting Prosser &
Keeton, Torts (5th ed), § 86, p 616, while adding its
own apt metaphor that "[w]hile nuisance may be
an impenetrable jungle, the issue of exceptions to
governmental immunity for nuisance per se and
public nuisance is more akin to an arid wasteland,
with few landmarks to be found." *Id.* While we
sympathize with these metaphors, we think the
Court of Appeals overlooked the implications of
the latter. The very aridity of the historical case
law in this area actually makes it easier to apply
the governing historical test for exceptions to gov-
ernmental immunity.

MCL 691.1407(1); MSA 3.996(107)(1) provides:

> Except as otherwise provided in this act, all
> governmental agencies shall be immune from tort
> liability in all cases wherein the government
> agency is engaged in the exercise or discharge of a
> governmental function. Except as otherwise pro-
> vided in this act, this act shall not be construed as
> modifying or restricting the immunity of the state
> from tort liability as it existed before July 1, 1965,
> which immunity is affirmed.[3]

This Court, in *Li v Feldt (After Remand),* 434 Mich
584, 592-595; 456 NW2d 55 (1990), squarely re-
affirmed the historical approach articulated by
Justice BRICKLEY's plurality opinion in *Hadfield,*

---

[3] As originally enacted by 1964 PA 170, § 7, the second sentence of
this provision stated that "[e]xcept as otherwise provided herein, this
act shall not be construed as modifying or restricting the immunity of
the state from tort liability as it existed *heretofore,* which immunity
is hereby affirmed." (Emphasis added.) 1970 PA 155, § 1, made a
minor grammatical change in the first sentence of this provision. 1986
PA 175, § 1, made further stylistic changes in this provision and, as
noted above, the substantive change of replacing "heretofore" with
"before July 1, 1965." July 1, 1965 was the effective date of 1964 PA
170.

*supra,* for purposes of determining the scope of possible exceptions to the immunity conferred by § 7(1). Under this approach the question is whether the claimed exception was clearly recognized in authoritative Michigan case law before July 1, 1965. See *Li (After Remand),* 434 Mich 594-595. This Court in *Hadfield* found such a clearly recognized historical exception in the case of the tort of "trespass-nuisance." See *Hadfield,* 430 Mich 154-169 (BRICKLEY, J.). Where the historical case law regarding a claimed exception truly constitutes an "arid wasteland," however, that would seem to be a strong indication that the exception cannot properly be recognized under § 7(1). This indication is confirmed in the case of the claimed public nuisance exception to governmental immunity.

The argument for historical recognition of a public nuisance exception rests largely upon Justice BOYLE's concurring opinion in *Hadfield,* 430 Mich 206-207—which in turn relied upon *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913), and *Trowbridge v City of Lansing,* 237 Mich 402; 212 NW 73 (1927)—and upon *Pound v Garden City School Dist,* 372 Mich 499; 127 NW2d 390 (1964).

*Wyoming Twp* and *Trowbridge* do not support the existence of a public nuisance exception. In the first place, both cases involved plaintiffs seeking only prospective equitable relief in the form of abatement, to which this Court, in both cases, found they were entitled. As Justice BRICKLEY correctly noted in *Hadfield,* such cases do not even fall within the purview of governmental immunity and cannot properly be cited in that context. See *Hadfield,* 430 Mich 152, n 5, 174, n 15. Justice BOYLE in *Hadfield,* after citing *Wyoming Twp* and *Trowbridge,* stated:

> Presumably, this Court, after recognizing the remedy of abatement against the government for a public nuisance, would not deprive a private individual who suffered special harm because of the same nuisance from a remedy well established at common law [e.g., damages]. It should follow that the public nuisance remedy, even where not based on invasion of another's property rights, is an exception to governmental immunity. [*Id.* at 207.]

We conclude, however, that this does not follow. The distinction between the government's liability for prospective equitable relief and its liability for retrospective damages or compensation, and the principle that the former kind of liability is generally not barred by sovereign immunity, are fundamental to sovereign immunity law.

The United States Supreme Court, for example, has long recognized this distinction in the context of the states' Eleventh Amendment immunity from suit in the federal courts, which immunity, the Court has held, does not extend to prospective equitable relief or ancillary costs associated therewith. See, e.g., *Missouri v Jenkins,* 491 US 274, 278-280; 109 S Ct 2463; 105 L Ed 2d 229 (1989); *Will v Michigan Dep't of State Police,* 491 US 58, 71, n 10; 109 S Ct 2304; 105 L Ed 2d 45 (1989) (noting that "[t]his distinction is 'commonplace in sovereign immunity doctrine' "); *Edelman v Jordan,* 415 US 651; 94 S Ct 1347; 39 L Ed 2d 662 (1974); *Ex parte Young,* 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908). This Court recognized this basic distinction in *McDowell v State Highway Comm'r,* 365 Mich 268; 112 NW2d 491 (1961). Upholding an assertion of governmental immunity in that case, we noted that "plaintiffs attempt to hold a department of the State, and so the State, responsible in damages for a tort. *No question of abatement of a nuisance, or of other relief a court*

*of equity might properly grant,* is or could be
before us on review of these judgments of the
court of claims." *Id.* at 269-270 (emphasis added,
citation omitted).

Furthermore, as Justice BRICKLEY noted in *Had-
field,* both *Wyoming Twp,* in which the plaintiffs
sought abatement of river sewage dumping which
affected riparian landowners, and *Trowbridge,* in
which the plaintiffs sought abatement of the oper-
ation of a "piggery"[4] which afflicted neighboring
landowners with offensive insects and odors, fell
comfortably within "the category of trespass-
nuisance." *Hadfield,* 430 Mich 174. Given that the
challenged conduct in both *Wyoming Twp* and
*Trowbridge* was "clearly trespass-nuisance and in
line with the exception adopted [in *Hadfield*]," *id.*
at 175, we see no basis for reading either case as
establishing a public nuisance exception.[5]

_____

[4] That is, a municipal garbage dump where hogs were kept to
consume the garbage.

[5] Justice BOYLE now, in addition to *Wyoming Twp* and *Trowbridge,*
relies upon *Dermont v Mayor of Detroit,* 4 Mich 435 (1857), and
*Burford v Grand Rapids,* 53 Mich 98; 18 NW 571 (1884), to support
the existence of a public nuisance exception. See BOYLE, J., *post,* pp
480-481. She also suggests reliance upon five cases cited by *Wyoming
Twp: Onen v Herkimer,* 172 Mich 593; 138 NW 198 (1912), *Merritt
Twp v Harp,* 131 Mich 174; 91 NW 156 (1902), *Seaman v City of
Marshall,* 116 Mich 327; 74 NW 484 (1898), *Ashley v Port Huron,* 35
Mich 296 (1877), and *Pennoyer v Saginaw,* 8 Mich 534 (1860). See
BOYLE, J., *post,* p 481, n 6, citing *Wyoming Twp,* 175 Mich 534.

*Dermont* does not support the claimed public nuisance exception.
That case *rejected* a claim for damages against a city arising from the
flooding of the plaintiff's cellar by the city sewer, stating:

The law is well settled in this country, and in England, that
towns and boroughs are not liable to individuals for defects in
their roads or bridges, except by some statute; and it is obvious
that the powers granted to and exercised by the defendants in
laying out streets and constructing sewers, are identical with
those of highway commissioners in establishing highways and
building bridges. [4 Mich 442-443.]

Even if *Dermont* had authorized recovery against the city, the case
would fall squarely within the trespass-nuisance tradition. With re-

We find *Pound, supra,* to be of no more help in establishing a public nuisance exception. At the outset, the question arises whether *Pound* is properly even considered as part of the relevant body of historical case law for purposes of § 7(1). As Justice BRICKLEY noted in *Hadfield,* 430 Mich 176, n 17, "it may . . . be argued" that it is not, given that the bill which became 1964 PA 170 was introduced and passed by the Senate before *Pound* was decided.[6] Justice BRICKLEY did not decide this issue in *Hadfield,* however, and his opinion did not command a majority in any event. Upon further

gard to *Burford,* while the Court in that case passingly referred at one point to the claim being one of "public nuisance," 53 Mich 100, a thorough examination of *Burford* reveals, as we discuss in part II(B), that the hypothetical exception to governmental immunity suggested in dicta in *Burford* is more properly characterized as relating to the concept of nuisance per se.

Of the five cases cited by *Wyoming Twp,* 175 Mich 534, two—*Onen* and *Merritt Twp*—involved only actions for equitable relief, and thus are no more relevant to the governmental immunity issue than *Wyoming Twp* itself. While *Seaman* explicitly authorized, and *Ashley* and *Pennoyer* may have implicitly countenanced, damages relief against the governmental defendants, all three cases are classic examples of the tort of trespass-nuisance. This is reflected both in Justice BRICKLEY's discussion of *Pennoyer, Ashley,* and *Seaman* in his *Hadfield* plurality opinion, 430 Mich 155-159, and in the explicit language used by this Court in the original decisions. See, e.g., *Ashley,* 35 Mich 301 (emphasis added):

> The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to *trespass* upon it than has a private individual. [Quoted with emphasis in *Hadfield,* 430 Mich 157.]

Thus, as we discuss in the text with regard to *Wyoming Twp* and *Trowbridge,* we see no basis for stretching such cases, falling clearly within the trespass-nuisance tradition, to support an ill-defined and otherwise unsupported "public nuisance" exception.

[6] Senate Bill 1132 was introduced on February 6, 1964, and passed the Senate on March 24, 1964. *Pound* was decided on April 6, 1964. The House of Representatives subsequently passed the bill with amendments (none of which affected the relevant language) on April 22, 1964. The Senate repassed the amended bill on April 23, 1964, and Governor Romney signed it into law as 1964 PA 170 on May 19, 1964.

consideration, we now conclude that *Pound* is properly considered for purposes of § 7(1).

First, while the drafters of 1964 PA 170 incorporated the language preserving the scope of governmental immunity "as it existed heretofore," and the Senate initially passed it, before *Pound* was decided, that language was not finally passed by either House of the Legislature or enacted into law until after *Pound* was decided. See n 6. We believe it is the date of final passage that is most relevant for interpretive purposes; furthermore, a time-relative statutory term like "heretofore" should ordinarily be interpreted with reference to the date the language takes legal effect. We thus agree with the Court of Appeals in *Li (On Second Remand)*, 187 Mich App 486-487, that the Legislature, in adopting 1964 PA 170, must be presumed to have been aware of *Pound* and to have felt no need to modify the bill to exclude *Pound* from its scope.

Second, the intent of the 1964 Legislature in this regard is no longer controlling in any event. The Legislature amended the statute in 1986 by, in part, replacing "as it existed heretofore" with "as it existed before July 1, 1965." 1986 PA 175, § 1. This amendment mooted the issue regarding what date the word "heretofore" in the original statute should be interpreted with reference to. *Pound,* decided more than a year before July 1, 1965, plainly falls within the scope of the amended language. Thus, *Pound* must be considered as part of the historical case law under § 7(1) for purposes of applying the test adopted in *Hadfield* and *Li (After Remand).*[7]

---

[7] This is also consistent with the plain language of *Li (After Remand)*, which stated that § 7(1) "preserved judicially created exceptions to immunity which were formulated before July 1, 1965." 434 Mich 592.

*Pound* involved a claim for injuries caused by water dripping off the roof of the defendant's public school building, which caused a neighboring public sidewalk to become coated with ice on which the plaintiff slipped and fell. This Court, relying heavily on *Ferris v Detroit Bd of Ed,* 122 Mich 315; 81 NW 98 (1899), found that the claim was not barred by governmental immunity. In *Ferris,* ice and snow had fallen from the roof of the defendant's public school building onto · the plaintiff's private premises, causing him to slip and fall. *Ferris* was thus a classic trespass-nuisance case. As Justice BRICKLEY noted in *Hadfield,* 430 Mich 159-160, *Ferris* exemplifies the development of the trespass-nuisance exception to governmental immunity.

As this Court stated in *Pound,* that case involved

> facts similar enough to those in *Ferris* to meet that case's criterion of "a direct injury to the person of the plaintiff, while outside the limits of the defendant's premises." We hold, therefore, that [the claim in *Pound* is] sufficient to state a cause of action to which the defense of governmental immunity may not be interposed. To hold otherwise would be to establish a distinction between a plaintiff who is directly injured while upon his own premises by the wrongful act of defendant and another plaintiff who is likewise directly injured in a place, such as a public way, where he has a right to be *and which is not subject to the authority of defendant.* Such a distinction would be without justification in logic or public policy.
>
> Defendant cites several cases which have sustained the defense of governmental immunity to actions for tortious injury, but in those cases the injury which plaintiff sustained did not occur, as in *Ferris* and *Pound,* "outside the limits of the defendant's premises" but rather occurred in areas

subject to the authority of defendants. See, e.g.,
*McDowell v State Highway Comm'r,* 365 Mich 268.
[*Pound,* 372 Mich 501-502. Emphasis added.]

*Pound's* citation and distinction of *McDowell* is
highly significant. *McDowell,* like the instant case
of *Li,* involved a claim arising from the allegedly
unsafe maintenance of a roadway. In *McDowell,*
the state highway department's allegedly negligent
failure to drain water from the surface of a high-
way permitted a dangerous sheet of ice to form.
The facts of *Li* are thus far closer to those of
*McDowell* than to those of *Pound.* In both *Li* and
*Garcia,* like *McDowell* but unlike *Pound,* the in-
jury occurred in an area subject to the authority of
the defendant. Thus, neither *Li* nor *Garcia* falls
within the narrow exception to governmental im-
munity enunciated in *Pound.*

In sum, *Pound* did not establish any public
nuisance exception to governmental immunity;
rather, it established, at most, a narrow corollary
to the narrow trespass-nuisance exception recog-
nized by cases such as *Ferris* and *Hadfield.* Find-
ing no other basis for a public nuisance exception
in the case law before July 1, 1965, we conclude
that no such exception exists under § 7(1). Thus, to
whatever extent the plaintiffs in *Li* and *Garcia*
may have properly stated claims of public nui-
sance—and we emphasize that we do not pass on
that question—such claims are barred by govern-
mental immunity.[8]

### B. NUISANCE PER SE

Whether there was an historically recognized

---

[8] In response to Justice BOYLE's assertion that "we may yet be
persuaded that a limited public nuisance exception to governmental
immunity exists," BOYLE, J., *post,* p 480, we can only state that, while
Justice BOYLE may be so persuaded, a majority of this Court today
rejects any such eventuality.

nuisance per se exception to governmental immunity poses a more difficult question. Justice BOYLE, in her concurring opinion in *Hadfield,* 430 Mich 207-208, expressed the view that a damages claim alleging a nuisance per se would fall outside the scope of governmental immunity, relying upon *Wyoming Twp, supra, Trowbridge, supra,* and *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936). As noted above, however, both *Wyoming Twp* and *Trowbridge* involved claims for prospective equitable relief, not damages, and are thus inapposite to the governmental immunity issue.[9]

*Royston* does provide some support for a nuisance per se exception, stating squarely (albeit in dicta and without supporting citation), that "[a]cts in the discharge of governmental functions which create a nuisance per se do not come within the immunity otherwise accorded." 278 Mich 260. While the significance of this language has been questioned, see, e.g., *Hadfield,* 430 Mich 175, n 16 (BRICKLEY, J.), we note that it is undeniably part of the body of historical case law for purposes of applying § 7(1), although, to be sure, it lacks the weight which would be accorded to language constituting the ratio decidendi of a case.

The significance of *Royston*'s dicta is augmented by a consideration of dicta in *Burford v Grand Rapids,* 53 Mich 98; 18 NW 571 (1884), which held that governmental immunity barred a suit for damages arising from the injury of the plaintiff's

---

[9] Furthermore, while the nuisances alleged in *Wyoming Twp* and *Trowbridge* may perhaps be described as nuisances per se, see *Hadfield,* 430 Mich 175 (BRICKLEY, J.), we would be hesitant to draw any broad conclusions from them regarding any nuisance per se exception to governmental immunity, when they are so much more readily viewed, as discussed in part II(A), as falling within the trespass-nuisance tradition.

horse, which was hit by a recreational bobsled on a public street. The plaintiff argued, inter alia, that the defendant was not entitled to immunity because, by authorizing recreational sledding (or "coasting," as it was then called) on the street, it had essentially authorized an activity constituting a nuisance per se. Chief Justice Cooley, for the unanimous Court, stated:

> If it were unquestionable that coasting upon a public highway was always a nuisance, there would be much plausibility in this contention, and perhaps it should be accepted as sound. . . . But coasting does not necessarily interfere with the customary use of the street, and might be indulged in with no serious inconvenience to any one . . . . On the contrary, as [coasting] itself is healthful and exhilarating, it seems eminently proper, if the street is not put ·to other public use, that this diversion be allowed, if not expressly sanctioned. [*Id.* at 103-104; see also *Rosario v City of Lansing,* 403 Mich 124, 135, n 9; 268 NW2d 230 (1978) (opinion of Fitzgerald, J.) (citing this language in *Burford* as the apparent, though uncited, authority for *Royston's* dicta).]

We conclude, however, that we need not now decide whether cases such as *Royston* and *Burford* establish a clearly recognized nuisance per se exception in the pre-1965 case law.[10] As our case law has long recognized, a nuisance per se is an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard

---

[10] While post-1965 case law cannot support the existence of an historically recognized exception to governmental immunity under § 7(1), we acknowledge the force of the arguments which have been made for the desirability of recognizing a nuisance per se exception to governmental immunity. See, e.g., *Hadfield,* 430 Mich 208 (Boyle, J., concurring) ("[t]o hold otherwise, would allow the state an absolute right to use its property in any manner it may choose without regard for the public at large or private persons"), citing *Gerzeski v Dep't of State Highways,* 403 Mich 149, 169; 268 NW2d 525 (1978) (Ryan, J., dissenting).

to the care with which it is conducted or maintained. See *Hadfield,* 430 Mich 207 (BOYLE, J., concurring); *Gerzeski v Dep't of State Highways,* 403 Mich 149, 168; 268 NW2d 525 (1978) (RYAN, J., dissenting); *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959); *People v Detroit White Lead Works,* 82 Mich 471, 476-479; 46 NW 735 (1890). "[U]nlike the nuisance in fact, nuisance per se is not predicated on the want of care, but is unreasonable by its very nature." *Hadfield,* 430 Mich 208 (BOYLE, J., concurring).

Neither the operation of the traffic light in *Li* nor the maintenance of the holding pond in *Garcia* can be said to constitute an intrinsically unreasonable or dangerous activity, without regard for care or circumstances. To the contrary, both activities serve obvious and beneficial public purposes and are clearly capable of being conducted in such a way as not to pose any nuisance at all. The very essence of the claims in both *Li* and *Garcia* is that the underlying activities became unreasonable and dangerous under the particular circumstances of each case because the defendants allegedly exercised improper or inadequate care. Thus, regardless of whether nuisance per se might qualify as an exception to governmental immunity, neither *Li* nor *Garcia* presents a colorable claim of nuisance per se.

### III. CONCLUSION

We reverse the judgments of the Court of Appeals and reinstate the trial courts' grants of summary disposition for the defendants.

BRICKLEY and MALLETT, JJ., concurred with CAVANAGH, C.J.

Riley, J., concurred only in the result.

Boyle, J. (*concurring*). I write separately to explain that to the extent that my concurrence in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988), may have been perceived as recognizing the principle that recasting negligence claims as nuisance will avoid the bar of immunity, that view is mistaken. Rather, my reservations regarding trespass nuisance as the only exception to immunity were based on the juridical notion that the Court should not eliminate all possible grounds for action against exceptional activities of government unless required to do so by the application of precedent to the facts of the case.

I

Nuisance law can be likened to a kaleidoscope of categories[1] comprised of a shifting mosaic that appears stable only at the moment a given court resolves a given set of issues. The same set of facts, however, may raise claims of public and private nuisance, nuisance per se, and trespass-intruding nuisance. For example, a township's building of a piggery in a residential area may constitute a nuisance per se, and if an ordinance prohibits such a use, a public nuisance, and if the noise or odors interfere with the use and enjoyment of neighbors, a private nuisance. These shifting concepts sometimes threaten to confound this Court's investigation into the existence of common-law exceptions to governmental immunity for various types of nuisance and the attempt to give

---

[1] Categories that this Court has recognized to define and delineate the parameters of nuisance include intentional or negligent nuisance, public or private nuisance, nuisance per se or nuisance per accidens, and intruding or trespass nuisance. See, e.g., *Hadfield, supra.*

guidance to lower courts and practitioners regarding actionable nuisance claims.

With this as a point of departure, it is important to consider precisely the facts before us. In *Li,* the plaintiff brought suit to recover for injuries she suffered in an automobile collision that allegedly resulted, in part, from an improperly timed traffic light.[2] The plaintiff seeks to recover from the defendants, the city, and two of its employees, on public nuisance and nuisance per se theories. On second remand, the Court of Appeals ruled that the plaintiff had stated a claim of public nuisance on these facts and that the nuisance per se claim was sufficiently colorable to merit further trial court consideration. 170 Mich App 256; 428 NW2d 36 (1988).

In *Garcia,* the plaintiffs seek to recover for the decedent's death by drowning in a pond behind a dam connected to an uncapped sewer pipe that created an undercurrent that pulled the decedent toward it. Although the city was aware of a previous drowning, the pipe was not guarded or covered. The plaintiffs also complained of inadequate warnings, which stated "no swimming," and failure to implement proper safety regulations.

I agree with the majority's result in *Li* because it constitutes a classical negligence claim, rather than actionable nuisance, and I agree with the majority's result in *Garcia* because the city is correct that, historically, the city would not have been liable in damages for its decisions regarding the proper method of constructing the sewer, a

---

[2] Probably because suit was not commenced in *Li* until after the statute of limitations would have elapsed for the highway exception to governmental immunity, MCL 691.1411; MSA 3.996(111), there is no claim before this Court that the facts of this case fall within the highway exception. Therefore, there is no occasion to consider whether a claim of design defect regarding a defective traffic light falls within that exception.

discretionary function.[3] Although I believe we may yet be persuaded that a limited public nuisance exception to governmental immunity exists, it cannot be said to reach the facts of either of these cases.[4]

The majority observes that the argument for recognition of a public nuisance exception rests largely on my concurring opinion in *Hadfield. Ante,* Cavanagh, C.J. at 468. As I there observed, public nuisance is derived from criminal law and much of it remains predicated upon violation of statutes.[5] Early common-law cases from this jurisdiction mention public nuisance as an exception to immunity as well. As early as 1857, this Court adverted to public nuisance in examining whether an individual could sue a municipality for damages for a defective public sewer that caused water to back up into his cellar. *Dermont v Mayor of*

[3] See, e.g., *Detroit v Blackeby,* 21 Mich 84; 4 Am Rep 450 (1870); *Ashley v Port Huron,* 35 Mich 296 (1877); *Larkin v Saginaw Co,* 11 Mich 88; 82 Am Dec 63 (1862).

[4] This Court has a long history of rejecting nuisance claims recast as negligence to avoid governmental immunity or some other doctrine that would bar recovery. See, e.g., *Alberts v Muskegon,* 146 Mich 210; 109 NW 262 (1906); *Kilts v Kent Co Bd of Supervisors,* 162 Mich 646; 127 NW 821 (1910); *Daniels v Grand Rapids Bd of Ed,* 191 Mich 339; 158 NW 23 (1916); *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936); *McDonell v Brozo,* 285 Mich 38; 280 NW 100 (1938).

[5] In Michigan, the doctrine of public nuisance is embodied in MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.* That statute provides:

Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance . . . or of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is declared a nuisance . . . .

The statute further provides authority for the Attorney General, prosecuting attorneys, and citizens to bring abatement actions to remedy noxious or harmful activities.

*Detroit,* 4 Mich 435 (1857). Explicitly distinguishing a situation in which a municipality created a public nuisance, the Court ruled that the corporation was under no obligation to furnish drainage and could not be sued. *Id.* Similarly, in its discussion of nuisance in *Burford v Grand Rapids,* 53 Mich 98, 103; 18 NW 571 (1884), the Court intimated that municipal authorities might be held liable if they licensed a public nuisance noting that "[i]f it were unquestionable that coasting upon a public highway was always a nuisance, there would be much plausibility in this contention, and perhaps it should be accepted as sound." In *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913), the Court granted injunctive relief to the township preventing the city from emptying its sewage into a river. The Court emphasized that a city that creates a public nuisance might be liable. *Id.* at 534.[6] These authorities suggest the existence of a limited public nuisance exception to immunity. Neither Justice BRICKLEY in *Hadfield,* nor Chief Justice CAVANAGH in this case, suggest that no public nuisance exception exists. Rather, they appear to counsel against recognizing any public nuisance exception beyond that which falls within the confines of trespass or intruding nuisance.

My reservations regarding the notion that the only public nuisance exception that survives is wholly encompassed within the trespass nuisance category are premised on the view that a potential exception to governmental immunity exists where

[6] Although *Wyoming Twp* was an abatement action, the Court noted that "the questions involved in this case" were covered by previous decisions. It then relied upon five authorities, including both damage actions and equitable actions, without distinguishing between them. *Id.* at 534. See also *Trowbridge v City of Lansing,* 237 Mich 402; 212 NW 73 (1927); *Pound v Garden City School Dist,* 372 Mich 499; 127 NW 390 (1964).

the claim for relief is based on actions of government for those uses of land that constitute an impending danger to persons in the enjoyment of property rights. For example, if the government concluded that it would be profitable to establish a gambling casino, and to situate such an establishment in a residential neighborhood, the government might be subject to abatement and to an action in damages by one who suffered special damages.[7] As this Court explained in *Kilts v Kent Co Bd of Supervisors,* 162 Mich 646, 651; 127 NW 821 (1910), a nuisance involves a condition "so serious as to interfere with the comfort of life and enjoyment of property, or so threatening as to constitute an impending danger to persons in the enjoyment of their legitimate rights." I am not yet persuaded that this limited exception to immunity does not remain. Conceding that the question of a nuisance per se exception "poses a more difficult question," the majority bypasses it by ruling that the claims in both *Li* and *Garcia* do not "constitute an intrinsically unreasonable or dangerous activity, without regard for care or circumstances." *Ante,* CAVANAGH, C.J. at 475, 477.

In *Hadfield,* I explained that nuisance per se is a category or method of proving public or private nuisance. It arises in those exceptionally narrow circumstances where "the Legislature or this Court may label a condition or activity patently unreasonable by its very nature . . . ."[8] As the majority acknowledges, there is strong evidence

---

[7] Municipalities may engage in activities that would threaten to release, or actually release, hazardous substances into the environment. See, e.g., *B F Goodrich Co v Murtha,* 958 F2d 1192 (CA 2, 1992) (the court ruled that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 imposes liability on a municipality which arranged to dispose of hazardous substances at two landfills).

[8] *Gerzeski v State Hwy Dep't,* 403 Mich 149, 169; 268 NW2d 525 (1978) (RYAN, J., dissenting).

that Michigan courts have recognized a nuisance
per se exception to immunity. *Ante,* Cavanagh,
C.J. at 474-477. The majority apparently con-
cludes, however, that because several of the cases
finding a nuisance per se overlap with the tres-
pass-nuisance category, that justifies its decision to
avoid recognizing it as an historically valid com-
mon-law exception to statutory immunity.[9]

Thus, I write separately because I believe that
the early cases of *Wyoming Twp, Trowbridge v
City of Lansing,* 237 Mich 402; 212 NW 73 (1927),
*Royston v City of Charlotte,* 278 Mich 255; 270
NW 288 (1936), and *Burford, supra,* support the
existence of a nuisance per se exception to govern-
mental immunity.[10] Such an exception ensures
that "[i]n the few instances wherein the Legisla-
ture or this Court may label a condition or activity
patently unreasonable by its very nature, the state
may not circumvent its liability in connection with
the situation or operation by raising the shield" of
immunity.[11]

I agree with the majority that neither *Li* nor
*Garcia* presents facts that would fall within a
nuisance per se exception.

---

Griffin, J. *(concurring in part).* While concur-

[9] Although the question of government liability for damages is
distinct from the nature of a nuisance claim, it must be observed that,
historically, nuisance arose as an alternative to trespass. McRae, *The
development of nuisance in the early common law,* 1 U Fla L R 27
(1948). This suggests that limitation of liability must be based on
Michigan's historical development of governmental immunity, not the
nature of the tort.

[10] In *Wyoming Twp, supra,* the Court ruled that a city's dumping of
sewage into a river constituted a nuisance per se and granted abate-
ment. In *Trowbridge, supra,* the Court decreed that a piggery consti-
tuted a nuisance per se and granted injunctive relief. In both *Royston*
and *Burford,* the Court explicitly and broadly professed, albeit in
dicta, that acts in the discharge of a governmental function that
create a nuisance per se are not protected by the shield of immunity.

[11] *Gerzeski,* n 8 *supra,* p 169.

ring in the result in each case, I write separately
to register my disagreement with the rationale
and to reiterate my adherence to the views I
stated in *Li v Feldt (After Remand),* 434 Mich 584,
596; 456 NW2d 55 (1990) (GRIFFIN, J., concurring
in part and dissenting in part). Under the analysis
there outlined, which rejects the "historical ap-
proach" construction of § 7 of the governmental
tort liability act, MCL 691.1401 *et seq.;* MSA
3.996(101) *et seq.,* both of these cases would be
dismissed for failure to fit within any of the five
narrowly drawn statutory exceptions to immunity
set forth in the act.

LEVIN, J. *(separate opinion).* In the last appear-
ance of these consolidated cases in this Court, *Li v
Feldt (After Remand),* 434 Mich 584, 592; 456
NW2d 55 (1990), this Court declared that the
statute immunizing governmental agencies from
tort liability[1] "preserved judicially created excep-
tions to immunity which were formulated before
July 1, 1965."[2]

The lead opinion proceeds on that premise, but
concludes that public nuisance is not an exception
to governmental immunity. The lead opinion does
not define public nuisance, and declines to "pass
on [the] question" whether the *Li* and *Garcia*
plaintiffs "have properly stated claims of public
nuisance . . . ."[3] The opinion states that decisions
of this Court that arguably presented public nui-
sance claims[4] should not be read to establish a

---

[1] MCL 691.1407(1); MSA 3.996(107)(1).

[2] See the lead opinion, *ante,* p 472, n 7 and accompanying text.

[3] *Id.,* p 474.

[4] At *ante,* p 468 ff, the lead opinion cites and discusses *Attorney
General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW
890 (1913), *Trowbridge v City of Lansing,* 237 Mich 402; 212 NW 73
(1927), and *Pound v Garden City School Dist,* 372 Mich 499; 127
NW2d 390 (1964). In connection with *Pound,* the lead opinion also

public nuisance exception to governmental immunity because these cases fall "comfortably within 'the category of trespass-nuisance' "[5] and are therefore " 'in line with the [trespass-nuisance] exception adopted [in *Hadfield*].' "[6]

The lead opinion then cites authority suggesting that there is a nuisance per se exception to governmental immunity,[7] but finds it unnecessary to decide whether such an exception has been judicially recognized because "neither *Li* nor *Garcia* presents a colorable claim of nuisance per se" as the term has been defined by this Court.[8]

In essence, then, the lead opinion states that nuisance per se might well be an exception to governmental immunity, but is not presented by these cases, while public nuisance—no matter what it may be, and whether or not presented by these cases—is not an exception to governmental immunity.

The effect of the lead opinion's analysis is to restrict nuisance exceptions to cases presenting trespass-nuisance and, possibly, nuisance per se.

### A

The lead opinion defines nuisance per se as "an activity or condition which constitutes a nuisance

discusses *Ferris v Detroit Bd of Ed,* 122 Mich 315; 81 NW 98 (1899), and *McDowell v State Hwy Comm'r,* 365 Mich 268; 112 NW2d 491 (1961).

The Court in *Wyoming Twp, Trowbridge,* and *McDowell* spoke of "public nuisance." The other cited cases, *Pound* and *Ferris,* do not advert to "public nuisance" or, indeed, mention the word "nuisance" at all. As the lead opinion's reliance on these cases suggests, however, the presence or absence of the word "nuisance" or the term "public nuisance" is not dispositive of whether there is a cause of action.

[5] *Ante,* p 470, quoting *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139, 174; 422 NW2d 205 (1988) (BRICKLEY, J.).

[6] *Ante,* p 470, quoting *Hadfield,* n 5 *supra,* 430 Mich 175.

[7] At *ante,* pp 475-477, the lead opinion discusses *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936), and *Burford v Grand Rapids,* 53 Mich 98; 18 NW 571 (1884).

[8] *Ante,* p 477.

at all times and under all circumstances, without regard to the care with which it is conducted or maintained,"[9] and as "an intrinsically unreasonable or dangerous activity . . . ."[10] This Court has also said that the creation or maintenance of a condition statutorily defined as a nuisance constitutes a nuisance per se.[11] It appears that nuisance per se, under these definitions, constituted an exception to governmental immunity at common law.[12]

I agree with the lead opinion that, to the extent that the instant plaintiffs have failed to allege facts raising colorable claims of nuisance per se—and, I would add, public nuisance—it is not appropriate to decide the extent of exceptions from governmental immunity therefor.[13]

I further agree that neither *Li* nor *Garcia* presents a colorable claim of nuisance per se. The activity engaged in by the governmental defendant did not, in either case, constitute "a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained."[14]

---

[9] *Id.,* pp 476-477.

[10] *Id.,* p 477.

[11] See, e.g., *Portage Twp v Full Salvation Union,* 318 Mich 693, 703; 29 NW2d 297 (1947).

[12] See *Royston v City of Charlotte,* n 7 *supra,* discussed *infra,* and *Burford v Grand Rapids,* n 7 *supra,* discussed in n 18 and in the lead opinion, *ante,* pp 475-476.

[13] In *Li v Feldt (After Remand), supra,* p 606, I observed that "[t]he question whether there is a nuisance per se or public nuisance exception to governmental immunity should be decided in a case where the court concludes that factually there is a nuisance per se or a public nuisance."

[14] *Ante,* pp 476-477. As the lead opinion states, "[t]he very essence of the claims in both [cases] is that the underlying activities became unreasonable and dangerous . . . because the defendants allegedly exercised improper or inadequate care." *Id.,* p 477.

B

I also agree that the plaintiff in *Li* may not maintain an action founded on a public nuisance exception to governmental immunity, but disagree with the reasoning adopted by the lead opinion in reaching that result.

Taking account of the factual allegations in *Garcia,* I would hold that a common-law public nuisance exception to governmental immunity might provide the plaintiffs in *Garcia* with a cause of action against the City of Jackson, a municipal corporation, and thus would affirm the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.

I

At common law, depending on the facts of the case and the jurisdiction in which the case arose, liability for personal injury arising out of the creation or maintenance of a nuisance on government property, even where there was no intrusion on private property, was a recognized exception to governmental immunity. The types of nuisance constituting exceptions to immunity were not limited to trespass-nuisance, but encompassed elements of public nuisance, nuisance per se, intentional or "absolute" nuisance,[15] and "attractive

---

[15] When a nuisance is described as intentional, it means " 'not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance.' " *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952), quoting *Beckwith v Town of Stratford,* 129 Conn 506, 511; 29 A2d 775 (1942). Although this Court determined in *Li (After Remand)* that intentional nuisance is not, categorically, an exception to governmental immunity, the "intentional" character of a nuisance may bear on whether an assertion of governmental immunity should be recognized. As Justice MOODY observed in concurrence

nuisance."[16] To judge from what courts did rather
than what they said they were doing, these formu-
lations were inconsistently labeled, and overlapped
to a large degree. Thus, that findings of govern-
mental liability have not always been neatly co-
extensive with particular definitions of nuisance
should not be determinative.

The majority of jurisdictions at common law
viewed nuisance as an exception to the immunity
of municipal corporations,[17] and many, though not
all, jurisdictions adopting this view allowed recov-
ery for personal injury resulting from main-
tenance of a nuisance. Most early cases addressing
the subject involved trespass-nuisance, but courts

in *Gerzeski v Dep't of State Hwys,* 403 Mich 149, 161-162; 268 NW2d
525 (1978):

> [N]uisances per se and intentional nuisances have been cou-
> pled for liability considerations. For example, on several occa-
> sions the Court has held that contributory negligence, while a
> defense for negligent nuisances, is not an appropriate defense
> for either nuisances per se or intentional nuisances.
>
> More importantly, the definition of an intentional nuisance
> clearly reflects that the nature of the conduct complained of in
> an intentional nuisance situation is more akin to conduct
> creating a per se nuisance than the careless or neglectful
> conduct which produces a negligent nuisance.
>
> *     *     *
>
> To hold the government immune from the consequences of its
> intentional acts which create a nuisance would be . . . uncon-
> scionable. [Citations omitted.]

[16] "Attractive nuisance" is properly analyzed as a species of negli-
gence. See 2 Restatement Torts, 2d, ch 13 (Condition and Use of
Land), § 339, p 197 ff, comment o, p 206. In many jurisdictions,
however, the common law conflated public nuisance and "attractive
nuisance" causes of action. See ns 58-59.

[17] Municipal corporations are part private entity, part governmen-
tal entity. See, e.g., *Sheldon v Kalamazoo,* 24 Mich 383 (1872). The
nuisance exception is almost always expressly phrased as overriding
the "governmental function" defense to liability. However, the tres-
pass-nuisance exception probably predates the governmental function-
proprietary function dichotomy. See Cooperrider, *The courts, the
legislature and governmental tort liability in Michigan,* 72 Mich L R
187, 279-281 (1973).

stated broadly that the government had no greater right than a natural or corporate person to maintain a nuisance to the injury of members of the public.[18] In practice, this often meant that cities were subject to actions at law and in equity for essentially private nuisances, often with a trespassory component, and for damage actions where injuries were caused by defectively maintained public roads or by obstructed or polluted public waterways.

As applied to municipal corporations,[19] a majority of jurisdictions addressing the question have held that governmental immunity does not bar actions to recover damages for personal injury resulting from a nuisance, including a public nuisance, created or maintained by a city, without regard to whether the conduct leading to the creation or maintenance of the nuisance occurred

---

[18] In *Burford v Grand Rapids*, n 7 *supra*, p 102, Justice COOLEY said:

> [I]f the act which is done by a municipal corporation would be tortious if done by a natural person, the corporation is held liable for it to the same extent, and for the same reasons that the natural person would have been. The legal protections of property are the same against artificial persons as against others, and the state itself, or any one of its municipalities, has no more power to deprive the owner of his possessions than has the private citizen.

Justice COOLEY cited cases from this Court, and courts of other jurisdictions, concerning governmental liability for trespass-nuisance, trespass, and nuisances in public roads.

[19] Although the majority of jurisdictions adhere to the view that a nuisance vitiates governmental immunity, personal injury actions against certain governmental defendants may nonetheless be barred in such jurisdictions. The Supreme Court of Virginia has limited the nuisance exception to "true municipal corporations," as distinct from such quasi-corporations as school districts, on the ground that the latter are "agents or instrumentalities of the state and 'partake of the state's sovereignty with respect to tort liability.' " *Taylor v Charlottesville*, 240 Va 367, 374; 397 SE2d 832 (1990), quoting *Kellam v Norfolk School Bd*, 202 Va 252; 117 SE2d 96 (1960) (both cases applying the nuisance exception recognized in Virginia law at least as early as 1926).

in the exercise of a governmental function.[20] Some
of these jurisdictions have applied this approach to
injuries occurring entirely on government prop-
erty, where no invasion of private property oc-
curred.[21]

It appears that the common law of Michigan, as
it had developed before July 1, 1965, does not
yield a satisfactorily clear answer to the question
whether certain types of nuisance, including "pub-
lic nuisance," constituted an exception to govern-
mental immunity from actions for damages,[22] par-
ticularly in the context of personal injury suffered
entirely on government property.

While there are " 'few landmarks to be found' "[23]
directly in point in Michigan case law, it is clear
that there is a territory, albeit imperfectly defined,
of public nuisance for which a member of the
public may maintain an action against a govern-

[20] See, generally, anno: *Rule of municipal immunity from liability
for acts in performance of governmental functions as applicable in
case of personal injury or death as result of a nuisance,* 75 ALR 1196;
supplemented by 56 ALR2d 1415. This principle was reflected in
treatises in common use before July 1, 1965. See, e.g., 38 Am Jur,
Municipal Corporations, § 647 *et seq.,* pp 355 ff:

> [A] majority of the courts which have passed upon the
> question have held that the immunity of municipal corpora-
> tions from liability for acts done in the performance of govern-
> mental functions does not extend to cases of personal injuries
> or death resulting from a nuisance created or maintained by a
> municipality[.] [*Id.,* § 649, p 358.]

[21] See, e.g., cases cited and discussed in n 36, *infra.*

[22] In *Rosario v City of Lansing,* 403 Mich 124, 134; 268 NW2d 230
(1978), Justice FITZGERALD observed that the early common law of
governmental immunity in Michigan offered "several different justifi-
cations for either governmental liability or non-liability . . . . The
result is that a case can be found supporting almost any proposition
concerning governmental immunity one chooses to advance." Early
decisions concerning municipal liability for nuisance, for example,
reached diametrically opposite results on equally plausible grounds.
*Id.,* n 8.

[23] *Ante,* p 467, quoting the Court of Appeals in *Li (On Second
Remand),* 187 Mich App 475, 480; 468 NW2d 268 (1991).

mental entity. It is the responsibility of this Court to draw reasoned lines to establish the boundaries of that territory.

From at least as early as 1860, this Court has recognized that members of the public had a right to be free from nuisances created or maintained by municipalities, and that, when this right was violated, damages were recoverable in appropriate cases. The rule of law giving rise to this remedy was sufficiently a part of the fabric of common judicial experience to require only infrequent exposition.

In *Pennoyer v Saginaw,* 8 Mich 534, 535 (1860), involving private nuisance, the Court laconically observed that "the city, by creating the nuisance . . ., is *prima facie* liable for its continuance."

In *Ashley v Port Huron,* 35 Mich 296, 301 (1877), the city was held to be subject to liability for damages for "trespass," not nuisance, when a sewer project caused water to be cast on the plaintiff's land. Discussing the rule, applied in the case, that "the public authorities have no more liberty to trespass upon [a private right of exclusive possession] than has a private individual," the Court said:

A like excess of jurisdiction appears when in the exercise of its powers a municipal corporation creates a nuisance to the injury of an individual. The doctrine of liability in such cases is familiar, and was acted upon in *Pennoyer v Saginaw,* 8 Mich 534. [*Id.*]

*Burford v Grand Rapids,* 53 Mich 98; 18 NW 571 (1884), concerned injury to the plaintiff's horse, which was struck by a bobsled in a street where the city permitted coasting. As set forth in the

lead opinion, *ante,* pp 475-476, the city was held
not liable because coasting was not "always a
nuisance."[24] In his discussion of municipal liabil-
ity,[25] Justice Cooley cited *Little v City of Madison,*
42 Wis 643 (1877), for the proposition that "any
dangerous and illegal use of a city street under the
license of its common council will be a nuisance
for the consequences of which the city must re-
spond."[26]

In *Kilts v Kent Co Bd of Supervisors,* 162 Mich
646; 127 NW 821 (1910), the plaintiff alleged both
negligence and nuisance in an action arising out of
the death of an employee working on a water
tower platform, which collapsed. The Court dis-
posed of the negligence claim, but *not* the nuisance
claim, on the ground of governmental immunity.
The nuisance claim was dismissed on definitional
grounds: the plaintiff's decedent, an employee, was
not regarded as a member of the public while on
the premises, and thus could not assert the claim
of public nuisance that would have been available
if the injury had been occasioned by a "defective
structure" that was "contiguous to a highway." *Id.,*
p 650. Nor could he assert the claim of private
nuisance that would have been available if the
tower had been "adjacent to an adjoining propri-
etor's land so that it was a menace to his property,
or to his person in the use of his land[.]" *Id.*

In *Attorney General ex rel Wyoming Twp v
Grand Rapids,* 175 Mich 503, 534; 141 NW 890
(1913), the Court held that dumping sewage into

[24] Note 7 *supra,* 53 Mich 103.

See also *Bagni v City of Bristol,* 127 Conn 38; 14 A2d 716 (1940),
citing *Burford,* and cases from other jurisdictions, for the rule that,
because coasting on a public street is not a nuisance per se, municipal
designation of coasting areas does not amount to licensing a public
nuisance.

[25] See n 18.

[26] Note 7 *supra,* 53 Mich 103.

the Grand River was an enjoinable public nuisance. In observing that cities creating public nuisances were "subject to the same rules as would be a private individual," the Court cited *Pennoyer* and *Ashley, supra,* both of which were actions for damages. The city's conduct in *Wyoming Twp* risked physical injury to the public at least as much as damage to property, and directly affected a navigable waterway, the very waterway involved in *Garcia.*[27]

Further, after enactment of the governmental tort liability act, justices of this Court recognized nuisance exceptions to governmental immunity other than nuisance per se and trespass-nuisance.[28]

The lead opinion, acknowledging that nuisance is an unstated exception to governmental immunity, leaves intact the trespass-nuisance exception previously discovered in the cases, and reserves the question whether nuisance per se constitutes a further exception to governmental immunity. The lead opinion dismisses the public nuisance exception by arguing that a number of public nuisance cases in which damages were recovered against governmental entities may be explained in other terms.[29]

---

[27] See also *Phelps v Detroit,* 120 Mich 447, 451; 79 NW 640 (1899) (a bridge impeded access to the plaintiff's property; the statute of limitations defense asserted by the city was held inapplicable to a continuing nuisance); *Phillips v Village of Armada,* 155 Mich 260, 262; 118 NW 941 (1908) ("Under all the authorities, which we need not cite, the defendant possessed no right to dump its sewage into an open ditch by the plaintiff's residence, which gave forth obnoxious and offensive odors"; maintenance of this condition was described as a "public nuisance" in *Gundy v Village of Merrill,* 250 Mich 416, 418; 230 NW 163 [1930]); *Royston v Charlotte,* n 7 *supra,* discussed passim.

See, generally, the review of case law in the opinions of Justices BRICKLEY and BOYLE in *Hadfield.*

[28] See, e.g., *Rosario v City of Lansing,* n 22 *supra,* and *Gerzeski v Dep't of State Hwys,* n 15 *supra* (opinions by FITZGERALD, J., joined by KAVANAGH, C.J., and LEVIN, J., and opinions by MOODY, J., joined by WILLIAMS, J.).

[29] *Wyoming Twp, Trowbridge,* and *Ferris,* n 4 *supra,* are described

The absence of clear authority in Michigan allowing recovery against a governmental entity for maintenance of a public nuisance does not justify the lead opinion's sweeping conclusion that a public nuisance exception did not exist at common law. There is no authority, other than today's pronouncement, to support the intuition that the Legislature, which the Court has acknowledged did not contemplate or address abrogation of nuisance causes of action,[30] "intended," in enacting the governmental tort liability act,[31] to allow recovery for trespass-nuisance and (perhaps) nuisance per se, but did not so "intend" with regard to public nuisance.

The lead opinion reads this Court's prior decisions narrowly, and does not consider the possibility that prior cases may not have arisen in such a way as to place directly in issue recovery of damages for injury suffered on governmental property as a result of a public nuisance. With the sole exception of *McDowell v State Hwy Comm'r,* 365 Mich 268; 112 NW2d 491 (1961), which is readily distinguishable as involving sovereign immunity,[32] the signers of the lead opinion cannot point to any case in which this Court has expressly rejected such recovery, or in which this Court has ruled that, while other jurisdictions have held otherwise, the rule excepting nuisance actions from governmental immunity does not apply to public nuisance.

The concern of those who favor expansive construction of governmental immunity is that, were

as trespass-nuisance decisions; of these cases, only *Ferris* was an action for damages. The lead opinion dismisses *Pound,* n 4 *supra,* on the basis that the injury occurred on a public sidewalk, which was not within the authority of the governmental defendant.

[30] See *Hadfield,* n 5 *supra,* pp 144-150 (BRICKLEY, J.).

[31] MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

[32] See n 38.

a substantive nuisance exception to be explicitly recognized in an area of the law lacking in fixed boundaries, any misstep by a governmental entity might subject that entity to liability, culminating in fiscal hemorrhage. This concern is understandable, but does not justify the conclusion that there is no public nuisance exception to governmental immunity. Public nuisance must be clearly defined, and rationally confined, so as to prevent an end run around governmental immunity. Line drawing is the business of this Court; that we might encounter difficulties does not relieve us of our responsibility.[33]

II

In *Garfield Twp v Young,* 348 Mich 337, 341-342; 82 NW2d 876 (1957), this Court adopted Prosser's definition of public nuisance, which imparts some of the history of the concept:

"[A]n act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. . . .

"To be considered public, the nuisance must affect an interest common to the general public,

---

[33] Whether a particular interference with a public right constitutes a public nuisance and should be actionable in damages is a separate question in each case, and can only be addressed by reference to the facts of the case. Clearly, every pothole is not a public nuisance. But neither should this Court summarily, before full factual development, exculpate from liability a municipal corporation that knowingly maintained a highly dangerous trap, to which plaintiffs' decedent was drawn to his demise.

The relationship between negligence and nuisance, with regard to tort actions against governmental defendants, is discussed in part III.

rather than peculiar to one individual, or several. . . . It is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right." (Prosser [Torts], § 71, pp 401, 402.)[34]

In the early stages of development of the law, only conduct constituting a criminal offense was a public nuisance. According to the Second Restatement of Torts, however, it is now established that, in a public nuisance action, "a defendant need not be subject to criminal responsibility. Thus a municipal corporation, which cannot be prosecuted for a crime, may still be liable in tort for the creation or maintenance of a public nuisance if the

---

[34] Public nuisance has elements in common with private nuisance. See, e.g., 4 Restatement Torts, 2d, ch 40 (Nuisance), § 821B, comment h, p 93. See also *Kilts v Kent Co Bd of Supervisors, supra,* pp 649-653. This Court said:

We are of the opinion that a nuisance involves, not only a defect, but threatening or impending danger to the public, or, if a private nuisance, to the property rights or health of persons sustaining peculiar relations to the same . . . . [T]he circumstances must be examined with a view to ascertaining *whether the alleged condition is one so serious as to interfere with the comfort of life and enjoyment of property, or so threatening as to constitute an impending danger to persons in the enjoyment of their legitimate rights.* [162 Mich 651. Emphasis in the original.]

The Court then quoted numerous definitions of public and private nuisance and concluded:

Running through all of these is the element of wrongful, continuing, impending danger to the lives, limbs, or health of the public, or to the legitimate property or personal rights of private persons peculiarly subject to the danger. [*Id.,* p 653.]

The category of public nuisance is also closely related to, and sometimes overlaps with, nuisance per se. *Garfield Twp,* for example, reaffirmed that a junkyard was "not a *public nuisance per se* at the common law." 348 Mich 340 (emphasis added).

conduct is such that a private individual would be liable."[35]

Courts in other jurisdictions have held municipal corporations subject to liability in public nuisance for creating or maintaining conditions that endanger the health or safety of members of the public. Courts addressing liability for nuisance, including those speaking in terms of public nuisance, have offered inconsistent definitions and modes of analysis. Some of the cases are perhaps properly considered to involve attractive nuisances, and some involve public ways.[36]

[35] 4 Restatement Torts, 2d, § 821B, comment d, p 89. See also *Burford,* ns 7 and 18 *supra,* and the holding of *Ft Oglethorpe v Phillips,* 224 Ga 834; 165 SE2d 141; 34 ALR3d 1002 (1968), discussed in n 37 *infra.*

[36] In *Renstrom v City of Nampa,* 48 Idaho 130, 133; 279 P 614 (1929), the city was held subject to liability to a pedestrian who slipped and fell after a city employee sprinkled a sidewalk with water in freezing weather and failed to remove the resulting ice, of which the city was aware. The court defined nuisance to reach injuries "resulting from the municipality's failure to remove a continuing and menacing condition [even if] brought about by the negligent performance of [purely governmental] duties."

In *Lehmkuhl v Junction City,* 179 Kan 389; 295 P2d 621 (1956), the city was held subject to liability where a child died after climbing onto a deceptively solid-looking crust atop a trash-and-water pit in a city dump. The court found this condition, maintained in the vicinity of a residential neighborhood, to constitute a public nuisance; arguably, it also amounted to an attractive nuisance.

In *Barker v Santa Fe,* 47 NM 85; 136 P2d 480 (1943), the defendant was held subject to liability on facts similar to *Lehmkuhl,* except that the treacherous crust floated atop a tank in a sewage disposal plant. Because the plaintiff denominated this condition an "attractive nuisance," the court took pains to establish that the plant was a corporate and not a governmental function. The court also, however, generally characterized the condition as a nuisance and thus as an exception to governmental immunity, which basis of recovery would have obviated the "corporate function" inquiry.

In *Hoffman v Bristol,* 113 Conn 386; 155 A 499; 75 ALR 1191 (1931), the defendant maintained, at a public pool, a diving board over cloudy water less than four feet deep. The city was held subject to liability when the plaintiff suffered serious injuries upon executing a dive. The court observed that no warning notice was posted where the plaintiff could have seen it, and that the deceptive appearance of the water underneath the diving board amounted to a dangerous condition. The court offered various definitions of nuisance, distinguishing "absolute"

The exception to immunity for public nuisance derived in part from the notion that certain acts or omissions of governmental entities went significantly beyond negligence.[37] The same intuition

from "negligent" nuisance on the basis that the latter entailed failure to remedy a condition not created by the city. This condition, however, was an absolute nuisance.

In *Johnson v Tennessean Newspaper, Inc*, 192 Tenn 287, 289; 241 SW2d 399 (1951), the plaintiff was injured in a city park when she stepped into "an invisible hole" in the ground in a grassy area, one of numerous water outlets normally covered by concrete blocks. The city knew, however, that the blocks were often removed by park patrons. City officials "admitted that these holes when [uncovered] were 'regular pitfalls or traps' and known to be 'extremely dangerous.' " *Id.*, p 292. The court of appeals held that " 'as originally created and constructed, this outlet was safe and constituted no nuisance,' " *id.*, p 290, so that only negligent maintenance had caused the danger; the Tennessee Supreme Court reversed and held for the plaintiff even though park management was a governmental function: "[T]he question of negligence is hardly involved," the court said, because the blocks were removed frequently enough that the city's reasonable exercise of vigilance did not suffice to eliminate the danger. *Id.*, p 291.

*Taylor v Charlottesville*, n 19 *supra*, p 372, applying common-law principles developed before 1941, held:

> A public nuisance is a condition that is a danger to the public. The essential characteristic of a public nuisance as it relates to highways is that the condition imperils the safety of a public highway and is dangerous and hazardous in itself. The dangerous condition need not exist within the street itself [because the] "purpose of the rule is to provide safety to persons lawfully using the streets . . . [and] dangers known to exist outside the street's limit [may be] so near thereto as to endanger public travel thereon." [Citations omitted.]

Thus, the city was held subject to liability for the death of a motorist where there were "no signs, guardrails, lights, reflectors, painted lines, sidewalks, or curbs to mark the end" of a dead-end road separated from "the edge of a steep precipice" by only a "37-foot strip of land . . . ." *Id.*, p 369.

See also *Ft Oglethorpe*, n 35 *supra*, p 838, reciting the Georgia statutory definition of nuisance as "[a]nything that works hurt, inconvenience or damage to another"; and *Bengivenga v City of Plainfield*, 128 NJL 418, 420; 26 A2d 288 (1942), defining public nuisance as "one which might cause damage to any member of the public."

[37] In *Ft Oglethorpe v Phillips*, n 35 *supra*, p 834, a city was held subject to liability in a nuisance action for injuries sustained by a motorbike rider as a result of a dangerously defective traffic signal. The complaint alleged that, for two weeks before the collision, city officials had been aware that the traffic light "would flash either red

that prompted courts to grant relief for trespass-nuisance may have prompted courts to allow recovery for injuries sustained as a result of defective public ways, including highways[38] and water-

or green on all four sides of the intersection simultaneously. Numerous accidents resulted . . . , and on the day the plaintiff was injured there were six collisions . . . because the defective traffic light flashed green in all directions . . . ."

The Supreme Court of Georgia stressed that, on such allegations, the city would not be permitted to assert immunity, despite characterization of traffic signal maintenance as a governmental function:

> A municipality like any other individual or private corporation may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or a ministerial function. While it is true that a municipal corporation is not liable for its acts of negligence in discharging a governmental function, yet *a municipal corporation cannot under the guise of performing a governmental function create a nuisance dangerous to life or health. . . . The allegations of the petition take the instant case beyond mere negligence and into a situation which constitutes a nuisance* . . . [,] *a defective condition that could work damage to anyone who came in proximity to it.* [*Id.,* pp 837-838. Emphasis added; citations omitted.]

[38] At common law, nearly every United States jurisdiction other than Michigan followed the majority rule, establishing governmental liability for interference with a public way, including highways and navigable waterways. Michigan was in the minority of jurisdictions holding that, with respect to liability for injuries sustained in a public road, the immunity of governmental entities may be overcome only by express action of the Legislature. *Detroit v Blackeby,* 21 Mich 84, 117 (1870), after listing the many jurisdictions holding to the contrary, concluded by holding, over a dissent by Justice COOLEY, "that it will require legislative action to create any liability to private suit for non-repair of public ways."

The Legislature responded, enacting 1879 PA 244 to establish governmental liability for injuries sustained on a public road. The law is now codified at MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*

Apart from *McDowell v State Hwy Comm'r, supra,* discussed by the lead opinion at *ante,* p 474, no decision of this Court has rejected on immunity grounds a properly pleaded nuisance claim arising out of injuries sustained on a public road. *McDowell* does not support the contention that common-law nuisance actions could not be maintained, irrespective of immunity and statutorily defined liability, against *any* governmental entity. The holding of *McDowell* was predicated on the *sovereign* immunity of the *state,* which, unlike that of certain other governmental entities, including municipal corporations, is absolute, except insofar as expressly abrogated by the Legis-

ways, and for other forms of harm suffered by persons while in the exercise of undoubted "public rights."[39]

The exception from immunity for trespass-nuisance did not evolve solely from concern about takings of private property without just compensation.[40] Judicial decisions allowing recovery for personal injury as well as damage to property on the basis of trespass-nuisance indicate that the right of action for trespass-nuisance does not depend on constitutional doctrine. In *Ferris v Detroit Bd of Ed,* 122 Mich 315; 81 NW 98 (1899), this Court found that governmental immunity did not bar a claim for injuries sustained when, as expressed by the lead opinion, "ice and snow [fell] from the roof of the defendant's public school building onto the plaintiff's private premises, causing him to slip and fall."[41]

lature. Although 1964 PA 170, the governmental tort liability act, was intended prospectively to make uniform the level of governmental immunity, see *Li (After Remand),* 434 Mich 593, n 8, the act's further purpose to preserve common-law exceptions to immunity would not be implemented by thoroughgoing retrospective application of sovereign immunity law to all governmental entities. See also n 19 *supra.*

[39] 4 Restatement Torts, 2d, ch 40 (Nuisance), § 821B, p 87, defines a public nuisance as "an unreasonable interference with a right common to the general public."

[40] See *Rosario,* n 22 *supra,* p 137, n 12 (FITZGERALD, J.); *Hadfield,* n 5 *supra,* p 211, n 6 (LEVIN, J.).

The superfluity of the taking rationale is especially evident in cases in which it cannot be plausibly asserted that the governmental defendant sought to obtain a valuable public benefit at the plaintiff's "expense," i.e., by means of activity having a destructive effect on the plaintiff's property or person. The resort to constitutional doctrine in *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970), where the accidental result of protracted, neglectful maintenance of a dangerously dilapidated building was treated as a "taking," appears to exemplify the cracks that have appeared in this rationale.

[41] *Ante,* p 473.

See 38 Am Jur, Municipal Corporations, § 584, pp 280-282, applying this principle to both negligent acts and nuisances:

"Intruding" governmental conduct constituting a nuisance may cause physical injury to a plaintiff without amounting to a taking, and without causing sufficient harm to the plaintiff's property to amount to actionable private nuisance, although it may in some cases also constitute trespass. If governmental liability for personal injury caused by nuisance be admitted in such cases, there would seem to be no sound reason to predicate availability of a remedy on the often fortuitous circumstance of where the plaintiff happened to be standing at the time of the injury.[42]

> Common justice demands that the right to be safe in life and limb should be as sacred to the citizen as his property rights. . . . [I]t would be the height of absurdity if, when a negligent municipal employee, engaged in the construction of a governmental work, carelessly blasted a piece of rock which broke into two fragments, one of them striking a passer-by and injuring him, and the other crashing through the roof of a neighboring house, the owner of the house was given compensation and the injured individual denied it . . . . It is only when the creation of a nuisance by express authority of the legislature causes both damage to property and sickness to individuals—in a state in which it is required that compensation be paid when property is damaged for the public use—that it could be held with any propriety that the damage to property was actionable and the injury to health was not . . . . If, however, the nuisance was not expressly authorized, there is no reason why it should not be actionable in one case as well as the other if it is caused by the corporation itself[.]

[42] The lead opinion emphasizes that *Pound,* n 4 *supra,* relied on *Ferris* and distinguished *McDowell.* See *ante,* pp 473-474. The plaintiff in *Pound* was injured while in an area that, although not his own property, was "a place, such as a public way, where he has a right to be and which is not subject to the authority of defendant." *Pound,* p 502. In holding the plaintiff's claim not barred by governmental immunity, the Court recited the *Ferris* formulation: " '[T]he doing of a wrongful act, causing a direct injury to the person of the plaintiff, while outside the limits of the defendant's premises.' " *Id.,* p 501, quoting *Ferris,* 122 Mich 319.

Nothing in these passages compels the conclusion that there is no public nuisance exception to governmental immunity. The Court in *Pound* did not state whether the formulations recited were words of description or words of limitation. The quoted phrases clearly describe what the Court actually did in that case, holding a governmental entity subject to liability for injuries received by a plaintiff while in

Although the lead opinion posits a gulf between trespass-nuisance and public nuisance, it is clear that they are aspects of the same principle. This Court· had not ruled or suggested before July 1, 1965, that while a member of the community has an historical right to recover for personal injury caused by a nuisance that impinges on his or her property notwithstanding governmental immunity, there is no parallel historical right to recover for personal injury suffered in the road or waterway that runs in front of the property and constitutes its only link to the rest of the world.[43]

### III

The governmental entities involved in these cases as defendants and amici curiae have issued dire warnings that recognition of nuisance exceptions will eradicate the longstanding immunity for negligent performance of governmental functions. In *Royston v City of Charlotte,* 278 Mich 255,

an area where he had a right to be and which was not subject to the authority of the governmental defendant. To parse the *Pound* formulations as words of limitation, so as to suggest that a governmental defendant maintaining a nuisance on a public way, or in another place where a plaintiff has an undoubted right to be, will not be subject to liability *unless* the site of the injury is "outside the limits of the defendant's premises," is to read into *Pound* a proposition that this Court has never stated.

The distinction by the Court in *Pound* of *McDowell,* n 4 *supra,* as a case involving injury in an area subject to the authority of the governmental defendant does not, contrary to the lead opinion's assertion, appear to be "highly significant," *ante,* p 474, for reasons set out in n 38 *supra.* Assuming that the school district in *Pound* was accorded the same sovereign immunity as the state highway department in *McDowell,* see *Sayers v School Dist No 1,* 366 Mich 217; 114 NW2d 191 (1962), the fact remains that municipal corporations were not entitled to sovereign immunity at common law. Thus, even if the interpretation of nuisance law offered by *Pound* reflects a substantive limitation on the law of governmental liability for nuisance, such a limitation would not be applicable to municipal corporations.

[43] I acknowledge the decisions of this Court that preceded the statutory regime of liability for negligently inflicted injury suffered in public roads. See n 38.

260; 270 NW 288 (1936), recovery was denied to a plaintiff injured on a defectively maintained park swing. This Court said:

> Acts in the discharge of governmental functions which create a nuisance per. se do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care.

These remarks were dicta—no nuisance per se was presented in the case—but demonstrate the Court's awareness of the exception, which extends to public nuisance as well. The Court was not careful with the definition of public nuisance, which is here made to seem indistinguishable from nuisance per se. The Court's primary concern appears to have been the hazard that actions predicated on negligence might be recast as "nuisance" to evade governmental immunity:

> Application of such rule would abrogate the established doctrine of governmental immunity by merely classifying as a nuisance the result of the negligence of the municipal agents and employees in the maintenance of a governmental instrumentality, and for which the city is not liable, to one of liability under another designation; or, in other words, immunizing the negligence but not the result.[44]

It would indeed be incorrect to hold that every act of negligence on the part of a municipality is actionable as a nuisance. But the complementary proposition—that an action in nuisance can never be predicated on negligent acts—is equally untena-

---

[44] *Id.,* p 261.

ble. Because the city's particular acts or omissions
constituting negligent maintenance of the park
swing were not themselves grounds of liability, the
consequences of negligent maintenance, without
more, could not be the subject of a nuisance ac-
tion.[45] The Court did not suggest that the presence
of negligence invariably precludes maintenance of
a nuisance action. Decisions in other jurisdictions
state the contrary.[46]

[45] *Id.,* p 260.

[46] Among the formulations of this principle are *Prifty v Waterbury,*
133 Conn 654; 54 A2d 260 (1947) (a municipality creating or maintain-
ing a nuisance is subject to liability for damages irrespective of
whether the misfeasance or nonfeasance causing the nuisance also
constituted negligence); *Barker v Santa Fe,* n 36 *supra* (same); *Ren-
strom v City of Nampa,* n 36 *supra* (a municipality is subject to
liability for injuries arising out of negligent performance of govern-
mental duties where nuisance results); *Bengivenga v City of Plain-
field,* n 36 *supra* (a person suffering special harm from a municipali-
ty's negligence in performing public duties is barred from maintain-
ing a damage action except where the injury is caused by a nuisance
resulting from the municipality's active wrongdoing); *City of Pekin v
McMahon,* 154 Ill 141; 39 NE 484 (1895).

In *Herman v Buffalo,* 214 NY 316, 320-321; 108 NE 451 (1915), the
New York Court of Appeals distinguished nuisance from negligence,
and held that a municipal corporation would be subject to liability for
death or injury caused by a nuisance defined in "absolute" or "inten-
tional" terms:

The creation or participation in the creation of the dangerous
condition must have been with the consciousness and under-
standing on the part of the [governmental defendant] that it
was creating it; or it must have been obvious and almost
certain to a reasonably prudent man . . . that [the governmen-
tal] acts would create or help to create it. The condition must
have been a purpose or object of the [municipality]; it must
have intended to effect it; or its acts have been so reckless and
unwarranted that that intention must be conclusively implied.
This is not declaring that it must have intended the danger or
the catastrophe. It must have intended the condition, but,
having that intention, may have thought it was not dangerous
or been thoughtless in regard to it. It must have violated the
absolute duty of refraining from the participating acts, not
merely the relative duty of exercising reasonable care, foresight
and prudence in their performance. The wrongfulness must
have been in the acts themselves rather than in the failure to
use the requisite degree of care in doing them, and therein lies
the distinction . . . between nuisance and negligence. The one

IV

I turn to the disposition of the instant cases.

A

In *Li,* I agree with the result reached by the lead opinion. The plaintiff essentially asserts that the City of Ann Arbor created or maintained a dangerous condition—a poorly timed traffic signal —in a public road, thus interfering with plaintiff's safe use of the road. Such interference, usually styled a public nuisance, lies at the core of the nuisance exception to governmental immunity.[47] Plaintiff alleges that the traffic signal at issue was programmed in such a way that a particular motorist was often obliged to remain at the intersection through two light cycles before being allowed to turn left. Faced with this hindrance, plaintiff's driver ran a red light to make a left turn. Plaintiff argues that "[s]afe travel on the public highway on which she rode was impeded by the programmed signal light which was dangerous in itself, a nui-

is a violation of an absolute duty, the other a failure to use the degree of care required in the particular circumstances—a violation of a relative duty. A nuisance may be created or maintained with the highest degree of care and the negligence of a defendant, unless in exceptional cases, is not material.

[47] The parties dispute whether the failure of the plaintiff in *Li* to commence her action within the two-year period prescribed by the highway liability statute, MCL 691.1411; MSA 3.996(111) was dispositive of her claim, irrespective of common-law exceptions to governmental immunity. The defendant and some amici curiae argue that all claims for personal injury arising out of defective public roads, including actions that otherwise could have been maintained by virtue of one or more common-law exceptions to governmental immunity, were subsumed under a single, explicit statutory rule, the highway exception to governmental immunity, which provides the exclusive remedy for such injuries. The plaintiff argues for application of MCL 600.5805(8); MSA 27A.5805(8), a three-year statute of limitations for commencement of actions.

sance per se, as well as being an obstruction to
travel, a public nuisance."[48]

Nuisance causes of action have been successfully
asserted against governmental entities where
traffic signs or signals were malfunctioning (particu-
larly if the malfunctions were clearly danger-
ous),[49] and, under similar circumstances, where the
defendant had actual or constructive notice of the
defect. However, no published decision in Michi-
gan or any other jurisdiction appears to hold a
governmental entity subject to liability for nui-
sance per se, or public nuisance, or nuisance of
any stripe, where the asserted obstruction to
travel was anything like the improperly pro-
grammed traffic signal here alleged.[50] Nor do these
allegations appear to support a cause of action
against a governmental entity on any other legal
theory.[51]

---

[48] Plaintiff cites no authority applying these assertions of law to the facts alleged.

[49] See *Ft Oglethorpe v Phillips,* n 35 *supra.*

[50] Nuisance liability has been imposed for defective traffic signal *design,* as distinct from the improper signal *programming* alleged in *Li.* The court in *Banks v City of Brunswick,* 529 F Supp 695 (SD Ga, 1981), aff'd 667 F2d 97 (CA 11, 1982), applied Georgia law, which does not require malfunction of an instrumentality before liability may be imposed under the nuisance exception to municipal immunity. The plaintiff, operating a motorcycle, collided in an intersection with an automobile driven by Armstrong, who had just executed a left turn.

> There was, however, no allegation of fault on the part of either motorist. Rather, plaintiff claimed that both he and Armstrong were lawfully following the traffic signal light. But, because *the design of the signal failed to include a yellow light between the left turn arrow and the green light in plaintiff's lane,* the drivers were *unwittingly directed to the point of impact.* [529 F Supp 697. Emphasis added.]

See, generally, anno: *Liability of highway authorities arising out of motor vehicle accident allegedly caused by failure to erect or properly maintain traffic control device at intersection,* 34 ALR3d 1008.

[51] Review of negligence-based claims, including decisions involving facts arguably presenting nuisance without mentioning the term, demonstrates that the plaintiff may not maintain an action sounding

Only *unreasonable* obstructions are public nuisances.[52] "[I]ntrinsically unreasonable or danger-

---

in nuisance. Such decisions manifest judicial concern for conditions such as the unannounced change in the timing of a traffic signal addressed in *Pritchard v Sully-Miller Contracting Co*, 178 Cal App 2d 246, 254; 2 Cal Rptr 830 (1960) "which *misled* [the driver] and virtually *created a trap* for him" (emphasis added). Similarly, the Supreme Court of Iowa noted that "[a] small and carefully circumscribed area of potential liability for the placement of traffic signs remains in the face of [the statute immunizing governmental units for liability relating to traffic control devices] for placing signs which *mislead* . . . 'or endanger the driver.'" *Phillips v City of Waukee*, 467 NW2d 218, 219 (Iowa, 1991) (emphasis in original; citations omitted).

The same rationale underlies *Delosovic v New York*, 143 Misc 2d 801; 541 NYS2d 685 (1989), aff'd 174 AD2d 407; 572 NYS2d 857 (1991), affirming a jury verdict for the plaintiff where a walk/don't walk sign was programmed in such a way that a pedestrian was misled into believing that she had time to complete traversal of a crosswalk; *Sparkman v Maxwell*, 519 SW2d 852 (Tex, 1975), holding that a driver who made an improper left turn and became involved in an intersectional collision was not guilty of negligence as a matter of law where governmental authorities were on notice that motorists were confused by a red arrow pointing left; and *City of Denton v Mathes*, 528 SW2d 625 (Tex Civ App, 1975), holding that a city was not immune from liability for indemnification to the driver of a truck involved in a collision where traffic proceeding south through an intersection was presented with a green light at the same time that traffic facing north was presented with a red light and a green left-turn arrow.

Although the plaintiff has argued that members of the public were annoyed by the traffic signal in *Li*, she does not assert that the relevant governmental entities were on notice that there was a dangerous condition. Cf. *Tuttle v Dep't of State Hwys*, 397 Mich 44; 243 NW2d 244 (1976).

Against the background of the statutory highway exception to governmental immunity, see n 47, a plaintiff claiming an *exception to* the two-year statute of limitations, assuming for the moment that any such exception were available, must allege governmental creation or maintenance of a condition that could not be ascribed to the mere negligence of a governmental employee or agent. Cf. *Tuttle, supra.* Yet even under a negligence theory, the plaintiff would be unable to show that the condition amounted to a danger to a traveler in the exercise of ordinary care and making lawful use of the highway. Cf. *Comerica Bank v Dep't of Transportation*, 168 Mich App 84; 424 NW2d 2 (1987), holding the defendant not negligent for its failure to install four-way stop signs at the intersection where the decedents' driver failed to stop at a stop sign.

[52] 4 Restatement Torts, 2d, ch 40 (Nuisance), § 821B, p 87.

ous"[53] conditions are nuisances per se. The traffic
light that led to disaster in *Li* was, no doubt,
frustrating and annoying, but it was not treacher-
ous, and did not constitute a trap.

B

In contrast with *Li*, the complaint in *Garcia*
alleged a condition that was, although not so
unavoidably dangerous as to constitute a nuisance
per se, a deadly trap for the decedent, of which the
city had notice. On these allegations, the question
whether such a cause of action may be maintained
can properly be resolved only with reference to all
the facts of the case, inquiry into which has been
foreclosed by the lead opinion's determination that
public nuisance is not an exception to governmen-
tal immunity.

The trespass-nuisance and public nuisance ex-
ceptions to governmental immunity include the
well-established principle that members of the
community may not be impeded from the safe use
of ways of necessity, such as public roads and
navigable waterways, which have historically been
the lines of communication making community
possible. Nor may a member of the community be
dispossessed by the government of his physical
well-being while "in a place, such as a public way,
where he has a right to be."[54] Such "a place" may,
depending on the circumstances as they appear
after full factual development, include premises
"subject to the authority of defendant."[55]

The record does not permit resolution of the
critical question in *Garcia*: whether, and in what

[53] *Ante*, p 477.

[54] *Pound*, n 4 *supra*, 372 Mich 502.

[55] *Id.* See n 42 *supra*.

capacity, the plaintiff's decedent may have had a right to swim in the holding ·pond behind the Holton Dam in Jackson. The dam and pond are an obstruction, albeit a governmentally created obstruction, in the path of the Grand River. If the holding pond were still an undisturbed part of the Grand River, a municipality might not have the authority to bar a member of the community from using the waters for transportation or recreation.

A governmental entity, certainly a municipal corporation, would be subject to liability for creating a nuisance by contaminating the river, just as it would be subject to liability for creating a nuisance by contaminating private property. As the city has no greater right than a private person to commit a trespass on private land, a member of the community ordinarily has as much right as the city to the use of a waterway such as the Grand River, at least as the Grand River existed in the days before projects such as Holton Dam were undertaken.[56] A governmental entity ordinarily has no inherent right to obstruct the use of, or create a trap in, a way of necessity.

It is clear, of course, that a few things have changed since Michigan was settled. It may be that the holding pond is properly under the control of governmental entities, so that this particular section of the river has become other than public. Nonetheless, it remains to be established whether control of the pond had passed entirely to

[56] Such ways of necessity are qualitatively different from property owned or occupied by the government, or enterprises conducted by the government, for many other public purposes. It has been thought necessary to create statutory categories of liability and immunity so that some of these governmental functions, such as the provision of recreational and emergency services, will receive appropriate levels of immunity. In these settings, there is a perceived need to avoid presenting governmental agencies with potential liability of such magnitude that the agencies have no incentive to engage in the publicly beneficial activity at all.

the City of Jackson,[57] or whether the public in some sense shares the right to use of the waters with one or more governmental entities. A trial court should determine, after a full evidentiary hearing, whether members of the community, such as the decedent, were with frequency using the pond for swimming or other purposes, and whether the city was aware of such practices, which could have given rise to a prescriptive right, if not a public right, to "be there."

Finally, even assuming that the holding pond had been so far removed from the public domain, so to speak, that the plaintiff's decedent could not be regarded as other than a trespasser, the city might be subject to liability to the plaintiff, under the law of premises liability, for maintaining an attractive nuisance.[58] As several justices recognized in *Rosario v City of Lansing,* 403 Mich 124, 134; 268 NW2d 230 (1978), circumstances amounting to a public nuisance, in the sense of a trap, may also constitute an attractive nuisance.[59]

---

[57] In that event, plaintiffs' claim might run afoul of *Pound,* n 4 *supra.* But see n 42.

[58] See 2 Restatement Torts, 2d, ch 13 (Condition and Use of Land), § 339, pp 197 ff.

[59] See, e.g., the cases of *Lehmkuhl* and *Barker,* discussed in n 36, *supra.* See also *City of Pekin v McMahon,* n 46 *supra.* In *McMahon,* the Supreme Court of Illinois affirmed a damage award against the defendant city in the death of an eight-year-old boy, who drowned in a water-filled pit owned by the city and located in a thickly settled area. The decedent was playing on some planks and logs floating on the surface when he slipped into the water. Judgment for the plaintiff was sustained on a theory of "attractive nuisance," but the court also held that "a municipal corporation holding property as a private owner is chargeable with the same duties and obligations, which devolve on individuals . . . , and must respond in the same way for creating or suffering nuisances." *Id.,* p 154. The court approved admission into evidence of a city ordinance that defined such conditions as nuisances and provided penalties for their maintenance. Insofar as the city's conduct was unlawful, and maintenance of the water pit constituted a nuisance as defined by law, the water pit might properly have been further characterized as a public nuisance or a nuisance per se.

Because attractive nuisance is part of the law of negligence, see n 16, the plaintiff must show that maintenance of the holding pond was not a "governmental function." See *Heino v Grand Rapids,* 202 Mich 363; 168 NW 512 (1918). The defense of contributory negligence might not be available to the city if the nuisance were determined to be intentionally created, see n 15, but see *Hickey v Zezulka (On Resubmission),* 439 Mich 408; 487 NW2d 106 (1992), decided today. It would remain a question of fact whether the "no swimming" signs posted by the defendant, and even the warning the plaintiff's decedent is said to have received from a playmate, were sufficient to support such a defense in light of allegations that the decedent was mentally retarded.